SO ORDERED.

SIGNED this 21st day of December, 2015.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

**Designated for online distribution but not print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

MARK STEPHEN NEIGHBORS and
SHELLY KAY NEIGHBORS,

                    DEBTORS.

CASE NO. 11-21003
CHAPTER 11

**MEMORANDUM OPINION AND JUDGMENT**
**CONVERTING CASE TO CHAPTER 7**

On October 29, 2015, trial was held on the motion of creditor CitiMortgage (Citi)

to convert this Chapter 11 case to a Chapter 7 case.[1]  Debtors appeared in person[2] and by

---

[1] Doc. 416. Trial of this motion was combined with trial on Debtors' Motion to Reimpose
the Automatic Stay as to 16961 and 16959 Gentle Slopes Drive. Doc. 186.  That issue is
addressed by a separate memorandum and judgment. Doc. 448.

[2] Debtor Shelly Neighbors did not testify.

their counsel, Camron Hoorfar.  Citi appeared by Eric L. Johnson and Kersten L. Holzhueter of Spencer Fane Britt & Brown, LLP.  The Court has jurisdiction.[3]

## FINDINGS OF FACT.

### A. PROCEDURAL HISTORY.

Debtors, with the assistance of counsel, filed a voluntary petition for relief under Chapter 11 on April 12, 2011.  One day later the Chapter 11 case of Neighbors Investments, Inc., owned by Debtors, was filed.[4]  A plan has been confirmed in that case.

Prepetition, Debtor Mark Neighbors, through various entities, was a real estate developer, contractor, and real estate agent.  Debtors' schedules were filed approximately one month after the filing of the petition.  The meeting of creditors was held on May 19, 2011.

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014).  This is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[4] Case no. 11-21022.

Case 11-21003    Doc# 460    Filed 12/21/15    Page 2 of 24

## 1. Adversary proceedings.[5]

Litigation of state law claims has been a significant factor in this case. In September, 2011, Debtors filed a motion to approve the employment of special counsel to prosecute or settle Debtors' potential claims against David Baumgartner, Linda Beadle, James Troutman, David Imhoff, Central Bank, Cornerstone Bank, the Bank of Versailles, and other persons or entities responsible for losses incurred by Debtors as a result of fraud, negligence, recklessness, violations of statutory laws, and other wrongful conduct.[6] The application and similar subsequent applications were approved.[7] At least five adversary proceedings have been filed. The first was filed in 2012 against Linda Beadle, a former employee of Debtors and Debtors' businesses, for conversion of property.[8] Mark Neighbors testified at trial that the proceeding was recently settled, although the settlement documents had not been prepared.

---

[5] The following examination of the case history and the estate as of the date of trial is based upon the testimony of Mark Neighbors. See Doc. 453 (October 29, 2015 transcript). Generally Mark Neighbors seemed confident that his testimony was accurate, and the Court has made findings in accord with his statements, even though in many instances his testimony cannot be verified from the available record and docket information.

[6] Doc. 64.

[7] Doc. 101. In June of 2013, Debtors' again moved to employ special counsel to prosecute the claim against Linda Beadle, to prosecute Debtor Shelly Neighbor's personal injury claim, and to "assist debtors with discovery against David Imoff, David and Marsha Baumgartner, Bank of Versailles, Central Bank and others persons and entities responsible for losses incurred by debtors." Doc. 245. The motion was granted. Doc. 249. In February, 2014, Debtors moved to employ different counsel for the same purposes, except the prosecution of the personal injury claim. Doc. 277. The application was also approved. Doc. 287.

[8] Adversary case no. 12-06097.

3

Three adversaries were filed in 2014. They have been closed. One was against secured creditor Nationstar Mortgage, LLC,[9] contesting the amount of its secured claim. After a difficult mediation, the case was settled. Debtors pro se filed two proceedings against secured creditor Bank of Versailles,[10] challenging the bank's handling of a check received from the 2009 auction sale of property in which Debtors claimed an interest. These adversary proceedings have been closed. One was dismissed with prejudice upon motion of the bank based upon lack of standing and expiration of the statute of limitations. The second was dismissed for failure to pay the filing fee.

The fifth adversary, against Citi, was filed recently, on October 15, 2015. It seeks damages for alleged violations of the Missouri Merchandising Practices Act and negligent misrepresentation relating to Citi's prepetition loans to Debtors.[11] At the time of trial, applications were pending to employ counsel licensed to practice in Washington and Michigan, but not Missouri and Kansas,[12] and an attorney licensed to practice in Missouri[13] to prosecute claims against Citi for "mortgage fraud, violation of mortgage

---

[9] Case no. 14-06025.

[10] Case nos. 14-06082 and 14-06083.

[11] Case no. 15-06106.

[12] Doc. 378.

[13] Doc. 380.

4

and/or banking laws, and other wrongful conduct."[14]  A similar suit against Citi was simultaneously filed in Missouri state court.

### 2. Reorganization plans.

After several extensions of the exclusivity period, Debtors filed a proposed plan of reorganization and a disclosure statement on December 30, 2011.  Citi objected and no confirmation hearing was held.  An amended plan and disclosure statement were filed on June 15, 2012.[15]  After objections were withdrawn, the amended disclosure statement was approved on November 16, 2012,[16] but a confirmation hearing was never held.

### 3. Dismissal and conversion motions.

On July 2, 2015, the Court held a telephonic status conference on the pending amended plan and other matters.  On August 4, 2015, Debtors filed their Motion to Dismiss Chapter 11 Bankruptcy Case[17] for cause under § 1112(b)(2), stating in part that there is no reasonable likelihood of rehabilitation because Debtors have been unable to reach agreement with Citi concerning the mortgage on their personal residence and the liens on two lots in Gravois Mills, Missouri; Debtors believe that they will not be able to confirm a plan within the time fixed due to disputes with Citi; and Debtors do not have

---

[14] *Id.*

[15] Docs. 166 & 167.

[16] Doc. 218.

[17] Doc. 402 (Doc. 402 was later withdrawn and Doc. 404 with minor changes was filed in its place).

sufficient source of income to sustain a Chapter 11 Plan or reorganize. Bank of Versailles filed a limited objection.[18] Citi objected to the motion.[19]

On August 31, 2015, Citi filed the motion to convert case to Chapter 7 which is the subject of this memorandum.[20] Citi contends that conversion, rather than dismissal, would be in the best interests of creditors. On the eve of the scheduled hearing on Debtors' motion to dismiss and Citi's motion to convert, Debtors moved to withdraw their motion to dismiss.[21] That motion was granted.[22]

**B. DEBTORS' SCHEDULES AND CURRENT CIRCUMSTANCES.**

**1. Real property.**

Debtors' Schedule A listed 7 parcels of real property.[23] Mark Neighbors testified that Debtors currently claim an interest in only two of them. The first scheduled property, a lot in Gravois Mills, Missouri, was surrendered to the secured creditor, Bank of Versailles in full satisfaction of the secured debt. The second property, an improved lot in Gravois Mills, Missouri, was also surrendered to Bank of Versailles in full satisfaction

---

[18] Doc. 405.

[19] Doc. 407.

[20] Doc. 416.

[21] Doc. 438.

[22] Doc. 440.

[23] Mark Neighbors testified that some of the real property listed on Schedule A was owned by limited liability companies, not the Debtors. No amended Schedule A has been filed. For purposes of this opinion the Court will assume the ownership as stated on Schedule A.

of the secured debt.  The third property, 16961 Gentle Slopes Drive, Gravois Mills, Missouri was sold on a short sale to a third party for $275,000 and the lien of Citi released.

The fourth property, which is still held by Debtors, is their homestead, located in Overland Park, Kansas.  Citi is the holder of the only lien on the homestead.  Although no payments have been made to Citi since 2011, the taxes are current.  Debtors claim that the value is significantly in excess of the lien amount.

Debtors still own the fifth property, 16959 Gentle Slopes Drive, Gravois Mills. Schedule A lists the value as $259,600.00, but Mark Neighbors testified that the value has increased since filing to $450,000, and he recently received an offer to purchase for $300,000.  Citi's proof of claim states it holds a lien for  $401,397.94 principal, plus interest and other charges.[24]  The deed of trust granting the lien was mistakeningly released by Citi, and the Court by separate order has found that Debtors agreed to reinstatement of the lien and ordered that the lien be reinstated.[25]

The sixth property, 16963 Gentle Slopes Drive, Gravois Mills, Missouri, was sold by the Debtors a couple of months ago, but there is no order approving the sale.  Mark Neighbors testified that he no longer owns the seventh property, undeveloped land located on West 151st Street, but the docket does not include an order approving the sale.

---

[24] Claim 7-2, filed May 26, 2011.

[25] Memorandum Opinion and Judgment Denying Debtors' Motion to Reimpose Stay and Finding that Debtors Agreed that the Deed of Trust Mistakenly Released by CitiMortgage be Reinstated. Doc. 448.

7

**2. Business Interests.**

The testimony concerning the business interests listed on Schedule B was as follows. Debtors currently have a 100% interest in Neighbors Investments, Inc. It filed for relief under Chapter 11 one day after Debtors filed this case and is operating under a confirmed Chapter 11 plan. Its principal asset is real property which Debtor Mark Neighbors testified is worth $900,000 subject to a lien of $450,000. Neighbors Investments, Inc. has no employees, but does hire professionals.

The operating report for Neighbors Investments, Inc. for August, 2015[26] reports income from the sale of property other than inventory of $177,496.03. Mark Neighbors testified that this was the proceeds from the sale of property located at 16963 Gentle Slopes Drive, Gravois Mills, Missouri, which is listed as an asset of the Debtors on their Schedule A. At the end of August 2015, after the payment of expenses, Neighbors Investments, Inc. had cash on hand of $165,368.72. The September operating report,[27] reports income of $3,320, but Mark Neighbors could not recall the source. At the end of September, cash on hand was reduced to $104,522.06, approximately $60,00 less than at the start of the month, but the reported expenses were only approximately $30,000. Mark Neighbors testified that these expenses included attorneys fees for "the whole mess," meaning both the corporate and individual bankruptcies. He could not account for the $30,000 difference between the reduction of cash on hand and the reported expenses.

---

[26] Exh. L, 156.

[27] *Id*. at 161.

8

Debtors' Schedule B also includes as a business interest 100% of Neighbors Realty Co., Inc. It presently has no assets and no debt. It has 13 to 14 vacant Kansas City residential lot listings. It will receive commissions as the lots are improved, but there are no homes under construction.

The next business interest is a 50% interest in Gentle Slopes Partners LLC. It is a Missouri limited liability company which is not currently operating, has no creditors, and no assets. Litigation asserting breach of contract and fraud against a partner is either pending or contemplated. The claims are alleged to be in excess of $100,000.

Metcalf 211, Inc. previously owned vacant real property, but the property has been returned to the financing bank in exchange for a release. Metcalf 211 has been dissolved. Stillwell Industrial, LLC owned developed industrial lots when the case was filed. The property was returned to the secured lender, and the limited liability company dissolved.

Debtors continue to own a 100% interest in Gentle Slopes Builders. It is a construction company which previously built homes at the Lake of the Ozarks. Presently it has no assets, no debts, and no construction projects.

Schedule B includes a 50% interest in M & D Partnership. It owned property on West 151st Street in Stanley, Kansas. This is the seventh tract listed on Schedule A. The property has been transferred to Cornerstone Bank, and the partnership has no assets and no debt. Mark Neighbors testified that he has claims against Cornerstone worth more than $100,000.

### 3. Personal Property.

The personal property listed on Schedule B includes accounts receivable owed by Neighbors Investments, Inc., the related Chapter 11 debtor, in an unknown amount. The loan is not documented by a note. Additional loans to Neighbors Investments were made post-petition, but are documented only in the monthly reports prepared by Debtors' bookkeeper.[28] Court approval was not obtained. Mark Neighbors does not know the amount, but would not be surprised if the loans exceed $150,000. Mark Neighbors also testified that some of the loans to Neighbors Investments could have been made by Neighbors Realty, which had accounts separate from Debtors, and money could also have been loaned by Neighbors Realty to Debtors.

Debtors' assets include two boats, which according to Mark Neighbors are presently valued at $2000 and $50,000 respectively. The boats are unencumbered.

Schedule B lists 11 contingent and unliquidated claims, resolution of which would require litigation. Debtors would like to pursue five of them. The first is a claim against an auction company which allegedly wrongfully failed to collect a $92,500 check in 2009. The company was contacted about the allegations, and counsel was retained by Debtors in 2011. But there is no lawsuit pending, and litigation counsel is not presently retained.

---

[28] *E.g.*, exh. E at 20 (Monthly operating report signed July 15, 2011 by Mark Neighbors, reporting "Loan to business $9,000.").

The second claim is against "Bank of Versailles and Baumgartners." The claim against the bank is alleged to be for about $500,000. Debtors have been trying to bring the actions. One was commenced pro se, but Mark Neighbors does not know the status. Debtors attempted to have counsel appointed to pursue the Baumgartners, but the request was opposed.

The third is against the Central Bank of the Lake of the Ozarks relating to allegedly unauthorized loans made to a partnership. Mark Neighbors is trying to retain counsel to pursue the matter. The fourth and fifth claims are against Cornerstone Bank. Mark Neighbors asserts he has a claim worth more than $500,000 for forgery and manipulation of records, but there is no pending litigation. Mark Neighbors also testified about a potential claim against David Imoff and Cornerstone CPA regarding records manipulation.

The listed claim against Linda L. Beadle recently settled. It was estimated that the estate would receive $40,000 to $45,000. Although included in Schedule B, Mark Neighbors testified that he no longer has claims against James Troutman or Safeco Insurance, and no interest in class action suits against Citi and Toyota, which are also listed. However, a foreclosure action filed prepetition by Citi against Debtors remains pending.

In summary, of the 11 claims listed as unliquidated contingent claims on Schedule B, Mark Neighbors testified that he wishes to pursue five, one has settled, four have been abandoned, and one, the foreclosure against Debtors, is pending.

Case 11-21003   Doc# 460   Filed 12/21/15   Page 11 of 24

Since the preparation of the schedules, Mark Neighbors has become aware of additional unliquidated claims. One is a claim against bankruptcy counsel related to his representation of Debtors in the action against Linda Beadle. The others are two claims against Citi, one filed in Missouri state court and the other as an adversary proceeding in this Court.[29] The adversary complaint alleges three violations of the Missouri Merchandising Practices Act regarding Citi's financing of the Gentle Slopes properties and negligent misrepresentation claims concerning Citi's loan modification program with respect to the loans secured by their residence and the Gentle Slopes properties.

**4. Claims against the estate.**

Debtors' Schedule D lists 8 secured claims. Mark Neighbors testified that the liens securing all except two have been released, and Citi is the holder of the only secured claim. Citi has filed three proofs of claim: (1) $401,397.94 secured by 16959 Gentle Slopes Drive, Gravois Mills, Missouri; (2) $401,331.70 secured by 16961 Gentle Slopes Drive, Gravois Mills, Missouri; and (3) $725,618.03 secured by Debtors' homestead. If the property securing the first claim is sold, a deficiency is likely.[30] The collateral securing the second proof of claim has been sold, and Citi is claiming a deficiency of $150,000 to $175,000, but Mark Neighbors doesn't believe any deficiency is owed. Mark Neighbors testified that the homestead is worth more than Citi's claim.

---

[29] Adversary case no. 15-06106.

[30] Debtors' Schedule A lists the value of this property to be $259,600.

12

The only unsecured priority claim has been paid, without the benefit of a plan or appropriate motion and approval of the Court.

The schedule of unsecured claims include 12 personal guaranties. Mark Neighbors testified that eight of the guaranties have been released. The remaining four guaranties secure claims of Neighbors Investments, Inc., which are being paid through the Neighbors Investments, Inc.'s Chapter 11 plan. Mark Neighbors does not expect that these guarantees will be pursued.

According to Mark Neighbors, the remaining scheduled unsecured claims, apart from the guaranties and any deficiencies of Citi, are approximately $10,600 for which proofs of claim have been filed and $24,631 for which no proof of claim have been filed. Testimony concerning the claims register generally confirms this analysis.

In summary, the claims against the Debtors, other than on the personal guaranties of the allegedly oversecured debts of Neighbors Investments, Inc. being paid through the corporate Chapter 11 plan, are: (1) unsecured claims of approximately $10,000; (2) Citi's claim secured by the homestead, which Mark Neighbors contends is oversecured; (3) Citi's claim secured by 16959 Gentle Slopes Drive, Gravois Mills, Missouri, which will probably result in an unsecured deficiency if the property is sold; and (4) Citi's deficiency claim following the sale of 16961 Gentle Slopes Drive, Gravois Mills, Missouri.

**5. Estate income.**

There is no evidence that Debtors plan to resume their real estate development and building businesses. At the time of trial, Debtor Mark Neighbors was employed by

13

Platinum Realty as a realtor, for which he received irregular, commission based income. Debtors' principal income is $9,338 monthly disability income, which will terminate at either age 62 or 65, which is two or five years in the future. Debtor Shelly Neighbors works with Mark Neighbors on real estate sales and has no other income.

**6. Events subsequent to trial.**

Consistent with the trial testimony, on November 16, 2015, counsel for the Debtors filed a motion to approve the negotiated settlement of the Beadle litigation.[31] Under the settlement, Beadle was to pay the Debtors $45,000 and provide "a truthful and accurate financial statement." Debtors and Beadle executed a Mutual Release and Settlement Agreement.[32]

But on December 8, 2015, Debtors pro se filed an objection to the settlement, for the reasons stated in three attached letters, one from the Debtors, one from the Debtors' son, and one from the Debtors' sister-in-law. These last two individuals are not listed as creditors. The reasons stated by Debtors for disapproval of the settlement include the allegations that the notarization on Beadle's financial statement is torn and that public records evidence that Beadle has not obtained the full $45,000 settlement funds from a mortgage on her home. Multiple additional objections relate to the amount of the settlement and events which occurred prior to the settlement, such as alleged undisclosed

---

[31] Doc. 444. The settlement was the result of mediation conducted by Bankruptcy Judge Karlin.

[32] *Id.* The agreement is attached to the motion.

14

conflicts of interest and discovery issues, which were known but not mentioned during the trial on the motion to convert.

**POSITIONS OF THE PARTIES.**

When moving for conversion to Chapter 7, Citi relies in part upon Debtors' statements in support of their motion to dismiss that cause for dismissal or conversion exists under § 1112(b). It then argues that conversion rather than dismissal would be in the best interests of creditors and the estate because it appears that Debtors have non-exempt assets, dismissal would make it much more difficult for creditors to realize the value of those assets, and a Chapter 7 case would provide for an orderly liquidation based upon established priorities.[33] Debtors respond that because they have withdrawn their motion to dismiss, Citi has failed to show cause exists and that should cause exist, Citi has failed to show that conversion is in the best interests of creditors and the estate because the unsecured claims of creditors other than Citi are approximately $10,000 and Citi has failed to show it has an unsecured claims and in what amount.[34]

**DISCUSSION.**

### A. DISMISSAL OR CONVERSION FOR CAUSE.

Section 1112(b)(1) is the controlling statute. It provides:

> Except as provided in paragraph (2) and subsection (c), on
> request of a party in interest, and after notice and a hearing,

---

[33] Doc. 416.

[34] Doc. 439.

15

> the court shall convert a case under this chapter to a case
> under chapter 7 or dismiss the case, which ever is in the best
> interests of creditors and the estate, for cause unless the court
> determines that the appointment under section 1104(a) of a
> trustee or an examiner is in the best interests of creditors and
> the estate.

Because neither paragraph (2) nor subsection (c) are applicable, Citi is a party in interest as defined by § 1109(b), and the Court has given notice and held a hearing, the first issue to be decided is whether there is cause. For purposes of conversion or dismissal, cause is defined by § 1112(b)(4), which sets forth a non-exhaustive list of items which constitute cause. The list is read in the disjunctive.[35] This means that cause is established when the existence of any of the items is proven, or the Court otherwise finds cause. Citi as the movant has the initial burden of demonstrating by a preponderance of the evidence that cause exists.[36]

### B. CAUSE EXISTS.

**1. There has been substantial loss to the estate and there is an absence of a reasonable likelihood of rehabilitation.**

The first item in the list of cause is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[37] Debtors' business, as reported on their Statement of Financial Affairs, was real estate development,

---

[35] 7 *Colliers on Bankruptcy* ¶ 1112.04[6] at 1122-27 (Alan N. Resnick & Henry J. Sommer Eds.-in-chief, 16th ed. 2015) (*citing In re Products Int'l Co.*, 395 B.R. 101, 110 (Bankr. D. Ariz. 2008)).

[36] 7 Colliers on Bankruptcy ¶ 1112.04[4] at 1112-22.

[37] 11 U.S.C. § 1112(b)(4)(A).

16

sales, and rental. During the pendency of the case, the Debtors' real estate assets have declined significantly. Only one Gentle Slopes property and their residence remain. Debtors are not engaged in construction. The estate's cash has been depleted by transfers to Neighbors Investments Inc., without Court approval, the execution of a promissory note, and an expectation of repayment.

Mark Neighbors is employed as a real estate agent, with compensation on a commission basis. Debtors' income is primarily from disability payments. There is no evidence of plans to revitalize Debtors' businesses.

When moving to dismiss, Debtors stated that "their overall financial situation has drastically declined" and "[due to the decease in income and loss of real estate, Debtors believe they do not have sufficient sources of income to sustain a Chapter 11 Plan or reorganization."[38] Trial testimony confirmed this assessment. The only change in Debtors' finances since the filing of the motion to dismiss is the negotiated settlement of the Beadle law suit, which was expected to provide income to the estate of approximately $45,000. But now Debtors have objected to the settlement. Even assuming that the settlement is approved, receipt of $45,000 would not be a basis on which to find that rehabilitation is likely. If this Chapter 11 case were to continue, administrative expenses, particularly professional fees, would continue to accrue rapidly, not only for services

---

[38] Doc. 404, 4.

related to plan development but also for litigation services, including the lawsuit recently filed against Citi.  Debtors have no on going business to generate the needed funds.

**2. Additional circumstances which evidence cause.**

"Because the list of grounds [in § 1112(b)(4)] is not all-inclusive, the court may consider other grounds as they arise, and may use its equitable powers to reach an appropriate result."[39]  As an additional ground for cause, the Court considers the Debtors' failure to obtain a confirmed plan.  Section § 1112(b)(4)(J) provides that cause is present when there is "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by court order."[40]  In this case, August 11, 2011, was the original deadline for Debtors to file a plan within the exclusivity period of § 1121(b).  Debtors filed three motions to extend the exclusivity period[41] which were granted, such that the exclusivity period expired on December 30, 2011.  Debtors filed their original plan on that date, and Citi objected.  Citi also objected to Debtors' first amended plan, filed on June 15, 2012.  Thereafter, Debtors made no serious efforts to obtain a confirmed plan.

Although these circumstances do not strictly constitute cause as defined by §1112(b)(4)(J) because no deadline for filing a plan was fixed by the Court, these

---

[39] 5 William L. Norton, Jr., and William L. Norton III, *Norton Bankruptcy Law & Practice 3d*, § 103.6 at 103-14 (Thomson Reuters 2014).

[40] 11 U.S.C. § 1112(b)(4)(J).

[41] Docs. 55, 76, & 106.

18

circumstances clearly point to cause. This case has been on file for four and one-half years, but Debtors are not pursuing confirmation. It is clear that a confirmed plan cannot be obtained without the consent of Citi, which is the only secured creditor and holds the largest unsecured claim. But Debtors and Citi are at loggerheads. The Court is puzzled as to why the United States Trustee's office did not file a motion to convert this case at least two years ago. The Court is also puzzled as to why the United States Trustee's office did not take a position on Citi's motion to convert this case to Chapter 7.

When filing their motion to dismiss, Debtors stated that they "believe that they will not be able to confirm a plan within the time fixed" because of unresolved issues with Citi.[42] Once Citi filed its motion to convert the case, and it became clear that the dispute between Citi and the Debtors over the reinstatement on the lien on 16959 Gentle Slopes Drive, Gravois Mills, Missouri, was going to be resolved prior to any dismissal, Debtors withdrew their motion to dismiss. They now attempt to use the withdrawal as a basis for asserting that the statements in their motion to dismiss as to cause cannot be considered in conjunction with Citi's motion to convert. The Court finds the withdrawal of the motion to dismiss was an attempt by the Debtors to manipulate the bankruptcy system and delay creditor action. Debtors' statement that they will not be able to confirm a plan because of unresolved issues with Citi will be considered.

---

[42] Doc. 404, 2.

19

At the hearing on Citi's motion to convert, Debtors' counsel argued that the evidence shows circumstances have changed since Debtors' motion to dismiss was filed and Debtors are working toward a second amended plan. The changed circumstances counsel identified are Citi's retention of new counsel with whom Debtors' counsel is having conversations and the filings of the adversary proceeding and the state court case against Citi.

The Court finds there are no changed circumstances indicating that Debtors can obtain a confirmed plan in a reasonable time. The adversary proceeding and the state court action against Citi are complex and will likely take years to resolve through litigation. Using litigation asserting state law claims only indirectly related to the amount of Citi's claims as leverage to achieve agreement to confirmation is not condoned and is not likely to achieve the desired result. Citi's past conduct and its filing of this motion evidence its decision not to consent to a plan. "Dismissal under § 1112(b)(2) is appropriate where the debtor's failure to file an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason."[43]

In addition, as circumstances constituting cause, the Court considers Debtors' overall conduct during the pendency of this case and concludes that Debtors have not adhered to the minimum standard of conduct required of Chapter 11 Debtors. They have

---

[43] *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989).

20

taken advantage of the bankruptcy stay to prevent their creditors from taking action against them, yet they have not seriously attempted to confirm a plan. Rather they filed litigation, disposed of assets, and dealt with debt through stay relief actions. Mark Neighbors has transferred estate property to Neighbors Investments, Inc. without Court approval and without receiving a promissory note. Debtors have not corrected their schedules, although Mark Neighbors testified at trial that they were not accurate.

Debtors are litigious and have used the bankruptcy case to hire professionals, to preserve the timeliness of prepetition state law claims for fraud and similar claims, and to file adversary proceedings. Debtors would like to file additional adversary proceedings for fraud and other alleged misconduct. But Debtors' modus operandi is not to litigate for the purpose of ending disputes, but to obtain leverage over creditors. Part of Debtors' settlement with the Bank of Versailles involved an agreement for the production of documents. This led to seemingly endless motions to compel requiring Court involvement. When Citi made an honest mistake releasing lien in conjunction with the sale of estate property, it took years and an evidentiary hearing to reinstate the lien over Debtors' objection. A judge of this Court devoted a full day to mediation of the Beadle litigation, a resolution was finally reached, but now Debtors seek to avoid the settlement.

For the forgoing reasons the Court concludes that there is ample cause to dismiss or convert this case.

**C. THERE ARE NO UNUSUAL CIRCUMSTANCES INDICATING THAT CONVERTING OR DISMISSING THE CASE IS NOT IN THE BEST INTEREST OF CREDITORS.**

Subsection (b)(2) of § 1112 provides that even if cause exists, the court may not convert or dismiss a case "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party" establishes one of two things: (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; or (2) the grounds for converting or dismissing the case include an act or omission of the debtor other than under subsection (4)(A), for which there exists a reasonable justification which will be cured within a reasonable time set by the court.

There is no evidence of unreasonable circumstances evidencing that conversion or dismissal is not in the best interests of the creditors and the estate. Further, even if there were such circumstances, as discussed above, Debtors have not shown that there is a reasonable likelihood that a plan will be confirmed in a reasonable time. In addition, as to the cause other than that defined by § 1112(b)(4)(A), the finding is not based upon acts of the Debtors which are reasonably justified and which can be cured in a reasonable time.

### D. THE COURT FINDS THAT CONVERSION WOULD BE IN THE BEST INTERESTS OF CREDITORS AND THE ESTATE.

Having found cause and the absence of special circumstances, the Court next considers whether dismissal or conversion is in the best interests of creditors and the estate.[44] "[A]s a result of the 2005 Amendments, Code § 1112(b)(1) is no longer

---

[44] The Court also notes that, if in the best interest of creditors and the estate, the Court may appoint a trustee or examiner, as an alternative to dismissal or conversion. The Court finds the estate does not have the cash flow necessary to support the appointment of a trustee.

permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause, and no unusual circumstances establish that conversion or dismissal is not in the best interests of creditors."[45]

"The Code does not define the phrase 'best interests of creditors and the estate.'"[46] The standard "implies a balancing test to be applied through case-by-case analysis. In the end the determination is a matter for sound judicial discretion."[47] The Court must consider the impact of each of the options.[48]

Counsel for the Debtors suggests that when considering the options the Court evaluate the ten factors enumerated by Bankruptcy Judge Nugent in *L&T Machining*.[49] But those factors are suitable for use in a business reorganization case and have little relevancy in an individual Chapter 11 case such as this. Of the ten, only two are applicable here. The first relevant factor is "the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors."[50] In this case, a Chapter 7 Trustee could reach Debtors' assets having a value, but these assets could also be reached by creditors outside of

[45] 5 *Norton Bankruptcy Law & Practice,* § 103:6 at 103-14.

[46] 7 *Collier on Bankruptcy,* ¶ 1112.04[7] at 1112-40.

[47] *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Ca. 1992).

[48] *Rollex Corp. v. Associated Materials, Inc.* (*In re Superior Siding & Window, Inc.*), 14 F.3d 240, 243 (4th Cir. 1994).

[49] *In re L & T Machining, Inc.*, Memorandum Opinion, case no. 11-11045, doc. 259 (Bankr. D. Kan. July 3, 2013).

[50] *Id*. at 10.

bankruptcy.  There are no Chapter 5 actions or other sources of recovery unique to bankruptcy.  However, a Chapter 7 Trustee could bring to conclusion any of Debtor's unliquidated claims which have value.

The second relevant factor is "whether any remaining issues would be better resolved outside the bankruptcy forum."[51]  In this case the unresolved issues are primarily the approval of the compromise of the Beadle litigation, the Missouri Merchandising Practices Act and negligent misrepresentation claims against Citi, and the unliquidated claims held by the estate which Mark Neighbors wishes to pursue.  A Chapter 7 Trustee could impose order evaluating the unliquidated claims and pursuing appropriate dispositions.  Mark Neighbors has demonstrated that he is incapable of making decisions that would bring these matters to an orderly conclusion.

Citi is the only significant unsecured creditor acknowledged by Debtors, and it clearly would be benefitted by conversion.  The Court is not as confident as is Mark Neighbors that all of the claims of unsecured guarantors have been resolved, so these may also need to be addressed by a Chapter 7 Trustee.

**CONCLUSION.**

For the foregoing reasons, the Court converts this case to Chapter 7 for cause.

**IT IS SO ORDERED.**

###

---

[51] *Id.*

24