## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARK STEPHEN NEIGHBORS and | ) | |
| SHELLY KAY NEIGHBORS, | ) | Case No. 11-21003 |
| | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |

### CITIMORTGAGE, INC.'S RESPONSE TO
### DEBTORS' OBJECTIONS TO PROOFS OF CLAIM NOS. 7-1, 7-2, 10-1, AND 25

COMES NOW CitiMortgage, Inc. (hereinafter "Citi"), by and through its attorneys of record, and for Response to the Debtors' Objections to Proofs of Claim Nos. 7-1, 7-2, 10-1 and 25 [Doc. 610-612] (collectively, the "Objections"), respectfully states as follows:

### INTRODUCTION

In 2011, Citi filed three proofs of claim that corresponded to the various loans the Debtors owed to Citi. After waiting approximately five years, Debtors objected to Citi's claims. The Objections appear to be driven by the Debtors' desire to have their Chapter 7 case dismissed. In several instances, the Debtors' objections are without legal or factual merit. In other instances, Debtors are attempting to disallow Citi's claims because Citi failed to utilize rules and forms that did not even exist when Citi first filed the claims. In other instances, the Objections are so vague it is impossible for Citi to fully respond to the allegations. Finally, Citi is in the process of amending its claims and such amendments will render many of the Debtors' objections moot. For the reasons set forth herein, the Objections should be overruled.

### FACTUAL AND PROCEDURAL BACKGROUND

1.    Debtors Mark and Shelly Neighbors (collectively, "Debtors") commenced their Chapter 11 bankruptcy case over five years ago by filing their voluntary petition on April 12, 2011 (the "Petition Date").

WA 8402309.5

## A.    The Lake Property

2.    On the Petition Date, Debtors (or their wholly owned limited liability company) owned real property located at 16959 Gentle Slopes Drive ("Tract E5") and 16961 Gentle Slopes Drive ("Tract E4") in Gravois Mills, Missouri (collectively, the "Lake Properties").

3.    Each of the Lake Properties secured two loans held by Citi (the "Lake Property Loans").  The deeds of trust securing both properties contained the correct legal description for Tract E4 and Tract E5, but each deed of trust contained the street address for the other property (*i.e.*, the deed of trust for Tract E4 listed the street address as 16959 Gentle Slopes Drive).

4.    The Lake Property Loan associated with Tract E4 ("Tract E4 Loan") was designated with the loan number ending "2843." The Lake Property Loan associated with Tract E5 ("Tract E5 Loan") was designated with loan number ending "2898". The Notes and Deeds of Trust related to the Lake Property Loans also contained "MIN" numbers. The Notes and Deeds of Trust related to Lake Property Loans were attached to Proof of Claim No. 7-2 (the "Tract E4 Loan Documents") and Proof of Claim No. 10 (the "Tract E5 Loan Documents", together with the Tract E4 Loan Documents, the "Lake Property Loan Documents").  Proofs of Claim Nos. 7-2 and 10 are attached hereto as **Exhibits A and B**.

5.    On May 26, 2011, Citi filed proofs of claim related to the Lake Property Loans, which were designated Claim Nos. 7-2[1] and 10.  The proofs of claim utilized Official Form B10 (4/10) and provided information specifically related to the claims and the relevant loan documents (which redacted the loan numbers).

---

[1] Claim No. 7 was originally filed on May 18, 2011 was subsequently amended on May 26, 2011.

WA 8402309.5

6.    The Lake Property Loans can be summarized as follows:

|  | Tract E4 Loan | Tract E5 Loan |
|---|---|---|
| **MIN** | 100271900000071275 | 100271900000071259 |
| **Tract Number of Property Securing Loan** | Tract E4 | Tract E5 |
| **Street Address of Property Securing Loan** | 16961 Gentle Slopes Drive | 16959 Gentle Slopes Drive |
| **Last 4 Digits of Loan No.** | 2843 | 2898 |
| **Proof of Claim No.** | 7-2 | 10-1 |
| **POC Face Amount** | $401,397.94 | $401,331.70 |

7.    On the Petition Date, the Debtors were in arrears with respect to the Tract E5 Loan. Debtors failed to make the required loan payments on the Tract E5 Loan after the Petition Date. On September 19, 2011, Citi filed its Motion for Adequate Protection or in the Alternative Motion for Relief from Stay related to Tract E5. [Doc. 67]. The Debtors did not object to the same. On November 3, 2011, the Court entered its Order lifting the automatic stay with respect to Tract E5. [Doc. 90].

8.    On the Petition Date, the Debtors were in arrears with respect to the Tract E4 Loan. Debtors failed to make the required loan payments on the Tract E4 Loan after the Petition Date. On October 14, 2011, Citi filed its Motion for Adequate Protection or in the Alternative Motion for Relief from Stay related to Tract E4. [Doc. 67]. The Debtors did not object to the same. On November 15, 2011, the Court entered its Order lifting the automatic stay with respect to Tract E4. [Doc. 102].

9.    On December 14, 2011, Debtors filed a motion seeking to sell the Lake Properties by short sale [Doc. 109], which the Court subsequently granted.  [Doc. 117].

10.    Debtors sold Tract E4 via short sale. Doc. [186 ¶ 7]. The sale related to Tract E5 fell through.  Following the sale of Tract E4, Citi intended to release its lien on Tract E4, but it mistakenly released its lien on Tract E5 due to the erroneous street addresses on the deeds of

WA 8402309.5

trust. Also, as part of the short sale of Tract E4, the debt associated with Tract E4 was forgiven. However, due to the erroneous street address, Citi mistakenly issued a 1099 listing Loan No. 2898 (Tract E5 Loan) rather than Loan No. 2843 (Tract E4 Loan). The debt associated with Tract E5 has not been forgiven.

11.     On August 7, 2012, Debtors filed their Motion to Reimpose the Automatic Stay as to Tract E4 and Tract E5.  The motion complained that Citi had not released its lien on Tract E4 and Citi intended to foreclose on Tract E5.  [Doc. 186 ¶¶ 9-10].

12.     The Court held a hearing related to the Motion to Reimpose the Automatic Stay on December 21, 2012.  Michael Wambolt, Citi's counsel at the time, appeared at the hearing on behalf of Citi and Erlene Krigel, Debtors' counsel at the time, appeared on behalf of Debtors.  At the hearing, Debtors' counsel represented that the issues related to the motion had been resolved and that the parties were working to correct the error on Tract E5.  Debtors' counsel also stated that the Court could overrule the motion.

13.     Debtors disputed whether there was an agreement regarding the mistaken release and the issue came before the Court on evidentiary hearing on October 29, 2015. After taking evidence on the stipulated legal issue of "[w]hether the proposed Order Overruling the Motion of the Debtors to Reimpose the Automatic Stay as to 16961 and 16959 Gentle Slopes Drive submitted by Citi pursuant to Local Rule 9074.1 should be entered in light of the 2012 agreement reached between Debtors and Citi with respect to Tract E5 and Citi's lien thereon" [Doc. 435], the Court took the matter under advisement.

14.     On December 2, 2015, the Court issued its Memorandum Opinion and Judgment Denying Debtors' Motion to Reimpose Stay and Finding that Debtors Agreed that the Deed of Trust Mistakenly Released by CitiMortgage be Reinstated ("E5 Judgment"). [Docs. 449 and

450]. In holding that the Debtors had agreed to reinstate the lien on the E5 property, the Court found the following:

> The Court finds Mark Neighbors' testimony that he did not authorize his counsel to represent that he had agreed to reinstate the deed of trust on E5 not credible. He was quick to answer any question when the answer appeared to provide no information adverse to his interests, but at other times, when a question was directed at any matter where the answer could be adverse to him, he was evasive, testified that he did not know, or that he had forgotten. When possible errors in his schedules, disclosure statement, and proposed plan were revealed, he attributed the errors to his former counsel, denied that he had discussed the filings with his counsel, questioned whether he had reviewed the pleadings, and even questioned whether he had signed the documents. In addition, Debtor testified that one of his present reasons for not agreeing to the settlement was because the continuation of the dispute provides leverage in his attempts to force Citi to agree to modification to the terms of his home mortgage loan.

E5 Judgment at 7. The Debtors did not appeal the E5 Judgment.

### B. Principal Residence Loan

15. Debtors borrowed the principal amount of $728,000 (the "PR Loan") from Capwest Mortgage Corporation ("Capwest"). The PR Loan is evidenced by a Promissory Note dated May 30, 2007 (the "PR Note"). A copy of the PR Note was attached to Proof of Claim No. 25. Proof of Claim No. 25 is attached hereto as **Exhibit C**.[2]

16. To secure the repayment of the PR Loan, the Debtors executed and delivered to Mortgage Electronic Registration Services a Mortgage bearing the date of May 30, 2007 (the "PR Mortgage"). The PR Mortgage provides for a lien on the Debtors' principal residence located at 14761 Bond Overland Park, Kansas 66221, legally described as:

> LOT 14 STONE POST RANCH, A SUBDIVISION IN THE CITY OF OVERLAND PARK, JOHNSON COUNTY, KANSAS. Tax ID No. NP81750000 0014

(the "Principal Residence").

---

[2] On July 29, 2016, Citi filed an amended Claim No. 25.

WA 8402309.5

17.     On June 13, 2007, the PR Mortgage was duly filed in the Office of the Register of Deeds, Johnson County, Kansas and recorded in Book 200706, Page 4756.  A copy of the PR Mortgage was also attached to Proof of Claim No. 25 (Exhibit C).

18.     The PR Note and PR Mortgage were ultimately assigned to Citi. The PR Note has been endorsed to Citi. On October 28, 2010, the Mortgage Assignment was duly filed in the Office of the Register of Deeds, Johnson County, Kansas and recorded in Book 201010, page 11067.  The Mortgage Assignment was also attached to Proof of Claim No. 25 (Exhibit C). The PR Note, the PR Mortgage and the Mortgage Assignment are collectively referred to herein as the "PR Loan Documents". The PR Documents and the Lake Property Loan Documents are collectively referred to as the "Loan Documents".

19.     On November 2, 2010, Citi commenced a lawsuit against the Debtors, among others, in the District Court of Johnson County, Kansas in the case styled *CitiMortgage, Inc. vs. Mark S. Neighbors, et al.*, Case No. 10CV09801 (the "Foreclosure Action").  In the Foreclosure Action, Citi sought to foreclose on the Principal Residence.  In response, the Debtors asserted counterclaims against Citi in the Foreclosure Action. The Foreclosure Action is currently stayed on account of the Bankruptcy Case.

20.     On November 18, 2011, Citi filed a proof of claim related to the PR Loan, which is designated Claim No. 25. The proof of claim utilized Official Form B 10 (4/10) and provided information specifically related to the claim, and attached the relevant loan documents.  *See* Exhibit C.[3]  Claim Nos. 7-2, 10 and 25 are collectively referred to herein as the "Citi Claims".

21.     On August 18, 2015, Citi sought relief from the automatic stay with respect to the Principal Residence. [Doc. 408]. Debtors objected to the motion for relief from stay and such

---

[3] *See supra* footnote 2.

WA 8402309.5

objection has not been withdrawn. [Doc 414]. The matter is currently set for status conference on August 12, 2016.

**C.    Pending Litigation against Citi**

22.    On October 15, 2016, the Debtors initiated an adversary proceeding, Adv. No. 15-06106, against Citi raising several claims under the Missouri Merchandising Practices Act as well as for negligent misrepresentation (the "Adversary Proceeding"). [Adv. No. 15-06106, Doc. 1]. The Neighbors attached the primary loan documents related to the Citi Claims. [Adv. No. 15-06106, Doc. 1]. Citi filed its answer to the complaint on December 1, 2015. [Adv. No. 15-06106, Doc. 9]. Citi believes the Adversary Proceeding is without legal merit.

**D.    Motion to Convert and Subsequent Chapter 7 Case**

23.    On August 31, 2015, Citi filed a Motion to Convert. [Doc. 416].

24.    The Motion to Convert was originally set for hearing on September 8, 2015, but was continued to see if the Debtors and Citi could come to a resolution. Debtors withdrew from such negotiations and initiated the Adversary Proceeding and a duplicate lawsuit in St. Charles County, Missouri.

25.    On December 21, 2015, the Court ruled in Citi's favor and issued its Memorandum Opinion and Judgment Converting Case to Chapter 7 (the "Conversion Judgment"). [Docs. 459-460]. The Conversion Judgment contained extensive findings of fact and conclusions of law including the following:

> In addition, as circumstances constituting cause, the Court considers Debtors' overall conduct during the pendency of this case and concludes that Debtors have not adhered to the minimum standard of conduct required of Chapter 11 Debtors. They have taken advantage of the bankruptcy stay to prevent their creditors from taking action against them, yet they have not seriously attempted to confirm a plan. Rather they filed litigation, disposed of assets, and dealt with debt through stay relief actions. Mark Neighbors has transferred estate property to Neighbors Investments, Inc. without Court approval and without receiving a promissory

WA 8402309.5

note. Debtors have not corrected their schedules, although Mark Neighbors testified at trial that they were not accurate.

Debtors are litigious and have used the bankruptcy case to hire professionals, to preserve the timeliness of prepetition state law claims for fraud and similar claims, and to file adversary proceedings. Debtors would like to file additional adversary proceedings for fraud and other alleged misconduct. But Debtors' modus operandi is not to litigate for the purpose of ending disputes, but to obtain leverage over creditors. Part of Debtors' settlement with the Bank of Versailles involved an agreement for the production of documents. This led to seemingly endless motions to compel requiring Court involvement. When Citi made an honest mistake releasing lien in conjunction with the sale of estate property, it took years and an evidentiary hearing to reinstate the lien over Debtors' objection. A judge of this Court devoted a full day to mediation of the Beadle litigation, a resolution was finally reached, but now Debtors seek to avoid the settlement.

Conversion Judgment at 20-21. The Court also found that conversion to Chapter 7 was in the best interests of creditors. In doing so, the Court found, in part, that:

A Chapter 7 Trustee could impose order evaluating the unliquidated claims and pursuing appropriate dispositions. Mark Neighbors has demonstrated that he is incapable of making decisions that would bring these matters to an orderly conclusion.

*Id*. at 24.

26.     On December 24, 2015, Patricia Hamilton (the "Trustee") was appointed Chapter 7 Trustee to the Debtors' bankruptcy estate.

27.     On June 10, 2016, Debtors requested that this Court compel the Trustee to abandon claims against various entities, including the claims asserted against Citi in the Adversary Proceeding. *See* Doc. 592. The Debtors complain that the Trustee has not moved as fast as the Debtors would like in getting information related to such claims and the Trustee might forego a potential recovery. *See* Doc. 592 ¶¶ 5-6, 11-12.

28.     Since conversion, the Debtors have rebuffed the Trustee's attempts to discover assets and to understand their financial affairs, which were initially outlined in Citi's objection to the Debtors' Motion to Dismiss this case. *See* Doc. 602 ¶ 25.

WA 8402309.5

29.     The Debtors have sought to exempt the entire Principal Residence in their Chapter 7 case even though it is located in city limits and exceeds one acre of land.  [Doc. 520]. The deadline to object to exemptions has not expired.

30.     On June 30, 2016, the Debtors filed the Objections, which are substantially identical. [Doc. 610, 611, and 612]. In the Objections, the Debtors seek to disallow the Citi Claims in their entirety.

## RESPONSE

31.     A claim objection triggers 11 U.S.C. § 502(b), which mandates that the Court "'determine the amount of such claim … and [to] allow such claim,' unless the claim, or a portion thereof, was not allowable under the subsections listed therein." *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (B.A.P. 10th Cir. 2003).

32.     A claim objection gives rise to a contested matter pursuant to Bankruptcy Rule 9014. *In re Flex Fin. Holding Co.*, 518 B.R. 891, 896 (Bankr. D. Kan. 2014).

33.     The Court when making its Section 502(b) determination, is "required to treat the [proof of claim] as *prima facie* evidence of the validity and amount of the claim, provided that it was 'executed and filed in accordance with' the Bankruptcy Rules, and presumably the Bankruptcy Code." *Wilson*, 295 B.R. at 145 (citing Bankruptcy Rule 3001(f)).

34.     With respect to claims that constitute *prima facie* evidence, the following burdens of proof apply:

> The objecting party has the burden of going forward with evidence supporting the objection…. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim…. However, an objection raising only legal issues is sufficient…. Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim….

WA 8402309.5

*Id.* (citation omitted). Further, "[a] terse statement that Debtors dispute a claim, without more, does not provide sufficient grounds to disallow a claim." *In re Chalakee*, 385 B.R. 771, 777 (Bankr. N.D. Okla. 2008).

35.    With respect to claims that do not constitute *prima facie* evidence, the following burdens of proof apply:

> Note, however, that if the [proof of claim] were executed or filed improperly it was not prima facie evidence of [the creditor's] claim, and [the creditor] would have the initial burden of proving that a claim exists and the amount of that claim. His failure to do so would require the disallowance of his claim. Proof of a claim, on the other hand, would shift the burden to the debtor, as the objecting party, to attack the validity of that claim either based on the law or evidence. The debtor's failure to meet its burden would result in the allowance of [the creditor's] claim. But, if the debtor met its burden, [the creditor] would have the ultimate burden to prove the validity and amount of his claim.

*Wilson*, 295 B.R. at 145 (citation omitted).

36.    Pursuant to Bankruptcy Rule 1019(3), "[a]ll claims actually filed by a creditor before conversion of a case are deemed filed in the Chapter 7 case." FED. R. BANKR. P. 1019(3). Thus, the Citi Claims were deemed filed in this Chapter 7 case.

37.    In 2011, Bankruptcy Rule 3001 was amended regarding the necessary information with respect to individual cases. The 2011 Amendments became effective on December 1, 2011. *See* **Exhibit D** (Supreme Court Transmittal to Congress and Order). The Citi Claims were filed prior to the effective date of the 2011 amendments.

38.    Pursuant to Local Bankruptcy Rule 3001.1, "[a] proof of claim, other than a priority claim, may be amended at any time prior to the trustee's notice of final distribution." LBR 3001.1(d). The Trustee has not yet filed a notice of final distribution.

39.    Citi amended Claim No. 25 on July 29, 2016, and is currently in the process of amending Claim No. 10.

**A.** **The Debtors' objection related to the lack of supporting documentation is without merit because the necessary documentation was attached to each of the Citi Claims.**

40.     Debtors object on the basis that the Citi Claims failed to satisfy Bankruptcy Rule 3001(c)(1) by not attaching a true and accurate copy of a writing between the parties to the Claims. *See* Doc. 610, ¶ 2.a; Doc. 611, ¶ 2.1; Doc. 612, ¶ 3.a. This allegation is simply false. Except for redacting the loan numbers from the loan documents, copies of the relevant loan documents were attached to each of the Citi Claims. *See* Exhibits A-C. Debtors have not identified any other document that they believe should be attached except for Form 410A, which is discussed below.

**B.** **The Debtors' objection related to Citi's failure to comply with certain Bankruptcy Rules is without merit because such Rules and related forms were not effective and/or did not exist at the time the Citi Claims were filed.**

41.     Debtors object to the Citi Claims and assert Debtors are entitled to sanctions under Bankruptcy Rule 3001(c)(2)(D) because Citi did not use Official Form 410A.  *See* Doc. 610, ¶ 2.b, 2.g; Doc. 611, ¶ 2.b, 2.1; Doc. 612, ¶ 3.b, 3.1.

42.     As referenced above, Bankruptcy Rule 3001(c)(2) did not become effective until December 1, 2011. Pursuant to the Supreme Court Order amending Bankruptcy Rule 3001, the amendment only governs bankruptcy cases commenced after the effective date of the amendment "and, insofar as *just and practicable*, all proceedings then pending." Exhibit D at 3 (emphasis added).

43.     Official Form 410A did not become effective until December 2015. Further, Official Form 410A is required only with respect to claims related to a debtor's principal residence. *See* FED. R. BANKR. P. 3001(c)(2)(C).  Claim Nos. 7-2 and 10 are not related to the Principal Residence. As a result, Official Form 410A would not be required regarding Claims No. 7-2 and 10 even if filed today.

WA 8402309.5

44.     Citi amended Claim No. 25 and is in the process of amending Claim No. 10 to utilize the new bankruptcy forms. Given the age of the bankruptcy case, however, Citi will require additional time to fully complete such amendment. It would be unjust, however, to assess any sanctions against Citi for not complying with rules and using forms that did not exist at the time the Citi Claims were filed. Indeed, the Debtors waited approximately four and a half years to even raise an objection to the Citi Claims. Accordingly, Citi requests that it be given sufficient time to file amended claims utilizing the new bankruptcy forms. Upon such amendments being filed, this aspect of the Objections will be rendered moot.

**C.      The Debtors' Objection related to merged balances is without merit because they relate to circumstances after the Petition Date.**

45.     Debtors assert that the Proofs of Claim related to the Lake Property Loans incorrectly merged balances from a short sale with the Debtors' mortgage on their principal residence. *See* Doc. 611, ¶ 2.d; Doc. 612, ¶ 3.d. Since the Citi Claims reflect the balances as of the Petition Date and the short sale of Tract E4 occurred post-petition, such an objection is without merit and should be overruled.

46.     With respect to Claim No. 7-2,[4] in light of the litigation and allegations made by the Debtors, Citi has been hesitant to simply withdraw the claim. Upon a determination that the short sale of Tract E4 and the forgiveness of the Tract E4 Loan has no impact on Claim No. 10 (Tract E5 Loan), Citi will withdraw Claim No. 7-2 (Tract E4 Loan) rendering any objection to such claim moot.

47.     With respect to Claim Nos. 7-2 and 10, Debtors also assert that Citi "has incorrectly merged account numbers and charged the Debtors for incorrect accounts." Doc. 611,

---

[4] With respect to the claim related to the Tract E4 Loan, Claim No. 7-1 was superseded by Claim No. 7-2. As a result, any objection to Claim No. 7-1 would be moot and should be overruled.

WA 8402309.5

¶ 2.c; Doc. 612, ¶ 3.c. Citi denies that any account numbers were "merged". However, due to the erroneous street address, Citi mistakenly issued a 1099 listing Loan No. 2898 (Tract E5 Loan) rather than Loan No. 2843 (Tract E4 Loan). The debt associated with Tract E5 has not been forgiven and the loan numbers have been subsequently corrected. With respect to the allegation that Citi "charged the Debtors for incorrect accounts", due to the vagueness of such allegation, Citi is without sufficient information to admit or deny such an allegation and therefore denies the same.

**D.     With respect to Misapplied Payments, the Objections fail to provide sufficient specificity for Citi to respond.**

48.     Debtors assert with respect to each of the Citi Claims that Citi "has misapplied payments from the Debtors, resulting in an inaccurate loan balance, if any." *See* Doc. 610, ¶ 2.f; Doc. 611, ¶ 2.h; Doc. 612, ¶ 3.h. Debtors have not identified what payments they believe have been misapplied, what period of time such misapplication took place, and why they believe such payments were misapplied. Accordingly, Citi is without sufficient information at this time to admit or deny such an allegation and as a result, denies the same.

**E.     The Debtors' Objections as they relate to fees and expenses fail to contain the necessary specificity for Citi to fully respond.**

49.     In each of the Objections, Debtors assert that Citi has incorrectly assessed the Debtors with inspection, attorney, and other collection fees[5] and insurance expenses. The sole basis for such objection was that such fees and expenses were unnecessary in the Debtors' opinion. Doc. 610, ¶ 2.c-e; Doc. 611, ¶ 2.e-g, Doc. 612, ¶ 3.e-g.  Debtors cannot allege that such fees and expenses are prohibited under the Loan Documents. Indeed, Debtors fail to provide any further explanation or legal basis to support their objection to the fees.

---

[5] Debtors do not specify what they consider "other collection fees".

WA 8402309.5

50.     The fees and expenses that Debtors find objectionable total approximately $5,700, which represent the aggregate total of all three claims. If Claim No. 7-2 is removed from the analysis, the amount totals approximately $4,000.

51.     Citi acknowledges, however, that if it is undersecured, then its claims ordinarily should not include *post-petition* fees and expenses. *See* 11 U.S.C. § 506(b). Claim Nos. 7-2 (Tract E4 Loan) and 10 (Tract E5 Loan) contain approximately $300 in post-petition attorney fees. Ironically, however, the Debtors are seeking to dismiss the case and if successful, Citi would be entitled to such fees and expenses. Likewise, Debtors appear to assert in other pleadings that Citi is fully secured. If so, then Citi is entitled to post-petition fees and expenses in addition to post-petition interest. In this respect, Citi reserves all rights to claim all post-petition amounts to the extent allowed by applicable law including, without limitation, 11 U.S.C. § 506(b).

52.     Finally, Debtors assert that the Citi Claims contain charges for forced place insurance. Doc. 610, ¶ 2.c; Doc. 611, ¶ 2.e, Doc. 612, ¶ 3.e.  The Citi Claims do not contain any charges for lender placed insurance. Lender placed insurance was utilized with respect to the Lake Properties only *after* the Petition Date. With respect to Claim No. 7-2 (Tract E4 Loan), such an objection is moot since Citi waived its deficiency as part of the short sale. With respect to Claim No. 10, the charge becomes relevant only if Citi seeks to collect such amount from the bankruptcy estate under Sections 503 and/or 506(b). Until Citi amends its proofs of claim and/or files an application seeking such a post-petition expense, such an objection is not yet ripe and should be overruled. Citi has not utilized lender placed insurance with respect to the Principal Residence.

WA 8402309.5

53.     In short, the Debtors are extremely vague in their Objections with respect to the fees and expenses. As a result, Citi is without sufficient information to fully admit or deny such allegations, and therefore denies the same. Even assuming, however, such allegations are correct and provide a legal basis to object to the Citi Claims, it only means that such claims should be reduced by the amount of the alleged improper fees. It does not mean, however, that Citi Claims should be disallowed in their entirety, which is what the Debtors are seeking.

54.     Citi reserves the right to supplement this response including, without limitation, asserting that Debtors lack the necessary standing to prosecute the Objections.

WHEREFORE, Citi respectfully requests that this Court enter an Order overruling the Objections and granting such other and further relief as the Court deems just and proper.

Dated: August 1, 2016.


Respectfully submitted,

SPENCER FANE LLP

s/ Eric L. Johnson

| Eric L. Johnson | KS# 20542 |
| Kersten L. Holzhueter | KS# 24885 |

1000 Walnut St., Suite 1400
Kansas City, MO  64106
Telephone:  816-474-8100
Facsimile:  816-474-3216
ejohnson@spencerfane.com
kholzhueter@spencerfane.com

Attorneys for CitiMortgage, Inc.

WA 8402309.5

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2016, a true and correct copy of the foregoing was electronically filed with the court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system and was sent via separate electronic mail to the following parties:

Camron L. Hoorfar                        Patricia E. Hamilton
Law Office of Camron Hoorfar, PC         Stevens & Brand, LLP-Topeka
202 SW Market St.                        917 SW Topeka Blvd.
Lee's Summit, MO 64063                   Topeka, KS 66612
hoorfarlaw@yahoo.com                     phamilton@stevensbrand.com


                                         ___s/ Eric L. Johnson_____
                                         Attorney for CitiMortgage, Inc.

WA 8402309.5