# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: ) | |
| ) | |
| Mark Stephen Neighbors, and ) | Case No. 11-21003 DLS |
| Shelly Kay Neighbors, ) | |
| ) | Chapter 7 |
| Debtors. ) | |

## DEBTORS' SUPPLEMENT TO DEBTORS' MOTION TO DISMISS CHAPTER 7 BANKRUPTCY CASE

COME NOW Debtors, Mark S. Neighbors and Shelly K. Neighbors, and for their Supplement to Motion to Dismiss Chapter 7 Bankruptcy Case, Debtors state as follows:

### INTRODUCTION

1. Debtors filed their voluntary petition for relief under Chapter 11 on April 12, 2011.

2. Debtors' Chapter 11 bankruptcy case was converted to Chapter 7 on December 23, 2015 (Doc. 460).

### First Federal

3. First Federal Bank, FSB filed three (3) proof of claims on June 30, 2011, Claim #13-1, Claim #14-1, and Claim #15-1.

4. First Federal Bank, FSB's claims are for loans that are secured by a corporate guarantee through Neighbors Investments, Inc., a corporation owned by the Debtors.

5. First Federal Bank, FSB's loans are a first mortgage on three (3) lots located at 6410, 6320, and 6380 W 151st St, Overland Park, KS 66223.

6. Neighbors Investments, Inc. was part of a separate Chapter 11 business bankruptcy, case number 11-21022, but Neighbors Investments, Inc. is not part of the instant case, Debtors' Chapter 7 personal bankruptcy.

1

7. Debtors and First Federal Bank, FSB reorganized the loans in Neighbors Investments, Inc.'s Chapter 11 business bankruptcy, case number 11-21022.

8. Since that reorganization, Neighbors Investments, Inc., has performed its obligations regarding the reorganized loan, without incident, since July 2014.

9. On July 15, 2016, First Federal Bank, FSB withdrew their Claims, #13-1, #14-1, and #15-1 because they were duplicate claims for loans made by Neighbors Investments, Inc., that were reorganized in Neighbor's Investments, Inc.'s separate Chapter 11 business bankruptcy, 11-21022 (Docs. 626-28).

<u>Farmers Bank & Trust N.A.</u>

10. Farmers Bank & Trust N.A. filed a proof of claim on May 11, 2011, Claim #5-1.

11. Farmers Bank & Trust N.A.'s claim is for a loan that is secured by a corporate guarantee through Neighbors Investments, Inc., a corporation owned by the Debtors.

12. Farmers Bank & Trust N.A.'s loan is a second mortgage on the three (3) lots located at 6410, 6320, and 6380 W 151st St, Overland Park, KS 66223.

13. Debtors and Farmers Bank & Trust N.A. reorganized the loan in Neighbors Investments, Inc.'s Chapter 11 business bankruptcy, case number 11-21022.

14. Since that reorganization, Neighbors Investments, Inc., has performed its obligations regarding the reorganized loan, without incident, since July 2014.

15. Famers Bank & Trust N.A. filed Claim #13-1 on November, 2, 2011 in Neighbors Investments, Inc.'s Chapter 11 business bankruptcy, case number 11-21022, for the same loan secured by a corporate guarantee through Neighbors Investments, Inc., a second mortgage on three (3) lots located at 6410, 6320, and 6380 W 151st St, Overland Park, KS 66223.

16. Farmers Bank & Trust N.A. filed Claim #13-1 as a secured claim for $184,631.40 because Farmers' Bank & Trust N.A. valued the three (3) lots located at 6410, 6320, and 6380 W 151st St, Overland Park, KS 66223 at $1,575,000.00.

17. Farmers Bank & Trust N.A. has incorrectly filed Claim #5-1 as an unsecured claim in this case, the Debtors' personal bankruptcy, in the amount of $184,600.85.

18. Farmers Bank & Trust N.A.'s Claim #5-1 is actually an over secured claim because the claimed amount, $184,600.85, is much less than the $1,575,000.00 value Farmer's Bank & Trust N.A. assigned to the three (3) lots located at 6410, 6320, and 6380 W 151st St, Overland Park, KS 66223.

19. Even if, arguendo, Farmers Bank & Trust N.A.'s second position claim of $184,600.85 is combined with First Federal Bank, FSB's first position claims of $238,592.80, the combined value, $423,193.65, is much less than the $1,575,000.00 value Farmer's Bank & Trust N.A. assigned to the three (3) lots located at 6410, 6320, and 6380 W 151st St, Overland Park, KS 66223.

20. Therefore, Farmers Bank & Trust N.A.'s inappropriately filed Claim #5-1 as an unsecured claim, and then Farmers Bank & Trust N.A. failed to amend or withdraw Claim #5-1 knowing that Claim #5-1 was over secured based on the information provided in their filing of Claim #13-1 in Neighbors Investments, Inc.'s Chapter 11 business bankruptcy, 11-21022.

21. Farmers Bank & Trust N.A.'s Claim #5-1 is a duplicate claim for a loan made by Debtors' business, Neighbors Investments, Inc., that was reorganized in Debtors' separate Chapter 11 business bankruptcy, 11-21022.

22. Farmers Bank & Trust N.A. has not been involved in Debtors' Chapter 11 personal bankruptcy for almost two (2) years. According to the Courtroom Minute Sheets documenting the

appearances at hearings held for the Debtors' Chapter 11 personal bankruptcy, Farmers Bank & Trust N.A. last appeared by Heather Zerger on April 25, 2013 (Doc. 242). Farmers Bank & Trust N.A. has only filed two (2) documents in the Debtors' Chapter 11 personal bankruptcy, and those documents were to withdraw duplicate proof of claims filed by Farmers Bank & Trust N.A. (Docs. 328-29). Farmers Bank & Trust N.A. has not attended a hearing, filed any documents, or voiced any objections since Debtors' Chapter 11 personal bankruptcy was converted to a Chapter 7 bankruptcy on December 21, 2015.

23. Consequently, Debtors' Chapter 7 bankruptcy is now essentially a two-party dispute between Debtors and the only remaining creditor engaged in a dispute with the Debtors, CitiMortgage, Inc.

### CitiMortgage, Inc.

24. CitiMortgage, Inc. amended their Claim #7-1 by filing Claim #7-2 on May 26, 2011.

25. CitiMortgage, Inc.'s Claim #7-2 indicates that their claim of $401,397.94 is a fully secured claim.

26. CitiMortgage, Inc. amended their Claim #10-1 by filing Claim #10-2 on August 3, 2016.

27. CitiMortgage, Inc.'s Claim #10-2 indicates that their claim of $397,954.15 has an unsecured portion of $137,954.15 because Claim #10-2 values the real estate securing the claim at $260,000.

28. CitiMortgage, Inc. amended their Claim #25-1 by filing Claim #25-2 on July 19, 2016.

4

29. CitiMortgage, Inc.'s Claim #25-2 indicates that their claim of $874,854.78 is a secured claim with no unsecured amount.

30. The Debtors' Chapter 7 bankruptcy is now a two-party dispute between Debtors and CitiMortgage, Inc. regarding the value of the real estate securing Claim #10-2 and whether Claim #10-2 is a secured or unsecured claim.

31. Based on recent appraisal, the Debtors contend that the value of the real estate securing Claim #10-2 is $455,000, and therefore, CitiMortgage's Claim #10-2 is fully secured. (*See* "Exhibit A").

## AUTHORITIES

32. 11 U.S.C. § 305(a) states:

   The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if–

   (1) The interests of creditors and the debtor would be better served by such dismissal or suspension.

33. 11 U.S.C. § 1112(b)(1) states:

   Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors of the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

### Bankruptcy Appellate Panel for the First Circuit

34. The Bankruptcy Appellate Panel for the First Circuit recently held that "[a] significant factor in favor of dismissing a case pursuant to § 305(a)(1) is the absence of a true bankruptcy purpose, particularly where the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor.[1]

35. Additionally, a survey of the relevant cases by the Bankruptcy Appellate Panel for the First Circuit found that "[b]ankruptcy courts have also ruled in favor of abstention when the parties have access to a state court forum that has greater expertise than a bankruptcy court on the key issues impacting the bankruptcy case."[2]

### Bankruptcy Court for the Eastern District of Pennsylvania

36. The Bankruptcy Court for the Eastern District of Pennsylvania has held that "11 U.S.C. § 305 grants bankruptcy courts the authority to suspend or dismiss entire cases as opposed to a proceeding in a case. Its purpose is to encourage out of court workouts between the debtor and its creditors."[3]

---

[1] *Efron v. Candelario*, 529 B.R. 396, 406 (B.A.P. 1st Cir. 2015); *see, e.g.*, *In re Duratech Indus.*, 241 B.R. 291, 300 (Bankr. E.D.N.Y. 1999) (dismissing bankruptcy case pursuant to § 305(a)(1) where debtor had pending business tort litigation against a creditor in state court and resolution of the bankruptcy depended entirely on the outcome of the state court proceeding); *Remex Elecs. Ltd. v. Axl Indus., Inc. (In re Axl Indus., Inc.)*, 127 B.R. 482, 484 (S.D. Fla.1991) ("Generally, a [bankruptcy] court should not take jurisdiction over a two-party dispute, unless special circumstances exist.") (citation omitted); *see also In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001) (dismissing involuntary chapter 7 petition where bankruptcy was filed in response to a two-party dispute between debtor and a single creditor).

[2] *Id.* at 406-07 (citing *In re T.D.M.A., Inc.*, 66 B.R. 992, 995 (Bankr. E.D. Pa. 1986) (concluding that bankruptcy courts should abstain when another forum has a particular expertise which is relevant to the matters in dispute)); *see also In re Mazzocone*, 183 B.R. 402, 421 (Bankr. E.D. Pa. 1995) ("Because a bankruptcy court is often not the proper forum in which to adjudicate non-bankruptcy issues, litigation of such issues is frequently best left to the state courts and should not be imposed upon this specialty court unless necessary to resolve a bankruptcy-centered dispute.").

[3] *In re Reed*, 94 B.R. 48, 53 (E.D. Pa. 1988) (citing *In re Futura Industries, Inc.*, 69 B.R. 831, 833 n. 3 (Bankr. E. D. Pa. 1987)); *see also* Reed, Sagar & Granoff, *Subject Matter Jurisdiction, Abstention and Removal Under the New Federal Bankruptcy Law*, 56 Am.Bankr.L.J. 121, 141 (1982).

37. The Court noted that "there are many cases which hold that dismissal is appropriate when the substance of the bankruptcy case is nothing other than a two party dispute."[4]

38. The Bankruptcy Court for the Eastern District of Pennsylvania recognizes a case, *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, where the United States Court of Appeals for the Eleventh Circuit "declared that bankruptcy courts should become involved in cases only if the bankruptcy court's services are needed to truly reorganize a debtor who is having financial problems."[5]

39. The United States Court of Appeals for the Eleventh Circuit dismissed the case because "[w]ith the exception of possible attorneys' fees, the Court finds no unsecured creditors; the Debtor has a group of secured creditors, who can look out for themselves in the nonbankrutpcy court."[6]

40. The Bankruptcy Court for the Eastern District of Pennsylvania "note[d] that many two-party dispute cases are . . . dismissed at the non-debtor party's insistence. However, the fact remains that such disputes do not belong in the bankruptcy courts regardless of who brings them and who seeks to remove them."[7]

41. The Court noted their "distinct preference for analyzing whether a dismissal or conversion of a Chapter 11 case is appropriate under § 1112(b), as opposed to an analysis under the vague and uncodified rubric of "good faith."[8]

---

[4] *In re Mazzocone*, 183 B.R. 402, 419 (Bankr. E.D. Pa. 1995).
[5] *Id.* at 419-20 (citing *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984).
[6] *Id.* at 420 (citing *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984).
[7] *In re Mazzocone*, 183 B.R. 402, 420 (Bankr. E.D. Pa. 1995).
[8] *Id.* at 411 (citing *In re Smith*, 77 B.R. 496, 500-01 (Bankr. E.D. Pa. 1987)).

7

42. The Bankruptcy Court for the Eastern District of Pennsylvania's preference is to dismiss Chapter 11 cases rather than convert them to Chapter 7 because upon dismissal, a Chapter 11 debtor has the option of whether to refile under Chapter 7 or not.

43. The Court "believe[s] that it may be unfair to convert a voluntary Chapter 11 case into, effectively, an involuntary Chapter 7 case unless specific actions on the part of the Debtor warrant it."[9] Furthermore, a Chapter 11 creditor arguing for conversion rather than dismissal "can always follow dismissal with the filing of an involuntary petition if such a proceeding is deemed appropriate."[10]

44. The Court and other bankruptcy courts have issued a plethora of applicable caselaw regarding the dismissal involuntary bankruptcy cases that are inappropriate for bankruptcy court because they are simply two-party disputes.

Bankruptcy Appellate Panel for the Ninth Circuit

45. In *In re Macke Itern. Trade, Inc.*, the Bankruptcy Appellate Panel for the Ninth Circuit reviewed and upheld a bankruptcy court's decision to dismiss a bankruptcy case under § 305(a) because it found that dismissal would be in the best interests of the debtor and creditors in what amounted to a two-party dispute.[11]

46. The bankruptcy court reasoned that although the bankruptcy court has jurisdiction, "[t]his is a two-party dispute between [debtor] and a single creditor with a long history of litigation."[12]

---

[9] *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995) (citing *In re Smith*, 77 B.R. 496, 501 (Bankr. E.D. Pa. 1987)).
[10] *Id.* (citing *In re Smith*, 77 B.R. 496, 501 (Bankr. E.D. Pa. 1987)).
[11] 370 B.R. 236 (B.A.P. 9th Cir. 2007).
[12] *In re Macke Itern. Trade, Inc.*, 370 B.R. 236, 243 (B.A.P. 9th Cir. 2007).

8

47. Furthermore, the Court found a lack of bankruptcy purpose because the debtor "was not in need of a debt adjustment, does not need a breathing spell from creditors, and does not need a discharge or a fresh start . . . [and t]here appears to be nothing to reorganize or even liquidate."[13]

48. The Bankruptcy Appellate Panel for the Ninth Circuit stated that the creditor may pursue debtor in state court and "continuation of this [bankruptcy] case would only lead to administrative expenses, and would be a waste of judicial resources."[14]

Bankruptcy Court for Puerto Rico

49. The Bankruptcy Court for Puerto Rico notes that the factors to be considered under § 305(a)(1) are "highly sensitive to the facts of each individual case . . . [and include] (1) an absence of a bankruptcy purpose, (2) cases where there is a pending state law proceeding, (3) another forum is better suited to see the case, (4) efficiency and economy of administration and (5) the case is a two party dispute."[15]

50. Additionally, that Court found that "[t]he absence of a true bankruptcy purpose (e.g., debt adjustment, breathing spell from creditors, and need for discharge and fresh start) is a significant factor in favor of granting § 305(a)(1) relief."[16]

51. The Bankruptcy Court for Puerto Rico also found that, "Courts have generally ruled in favor of abstention when the parties have access to a state court forum and the possible advantage of that forum over a bankruptcy court."[17]

---

[13] *In re Macke Iern. Trade, Inc.*, 370 B.R. 236, 243 (B.A.P. 9th Cir. 2007).
[14] *Id.*
[15] *In re Efron*, 535 B.R. 505, 510-11 (Bankr. P.R. 2014) (citations omitted).
[16] *Id.* at 511 (citations omitted).
[17] *Id.*

9

### Bankruptcy Court for the Northern District of Florida

52. The Bankruptcy Court for the Northern District of Florida recently surveyed caselaw regarding the different factors courts have applied in involuntary bankruptcy cases pursuant to § 305 of the bankruptcy code. The Court notes that "[a]s always, it is important to start with the statute itself. Section 305(a)(1) provides: 'The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension.'"[18]

53. The Bankruptcy Court for the Northern District of Florida looks to three factors from *Collier on Bankruptcy*:

"[S]ome courts have limited the application of § 305(a)(1) to involuntary bankruptcy cases and devised the following three-part test for abstention:

1) the petition was filed by a few disgruntled creditors and most creditors oppose the bankruptcy proceeding;

2) there is an out-of-court restructuring in progress; and

3) the debtor's interests are furthered by dismissal."[19]

54. The Court agreed with the debtors in that "it is undeniable that this case is, at its heart, a two-party dispute . . . [and] the facts suggest that dismissal under the abstention statute is the best remedy for all concerned; especially when applying the test suggested in Collier."[20] In particular, the Court found, under the Collier test, there was only one remaining creditor, and no other creditors appeared in opposition. The Court also considered the fact that if the alleged

---

[18] *In re Peter Hendrik Bos, Jr., & Legendary Holding, Inc.*, 15-30922-KKS & 15-30923-KKS, *58 (Bankr. N.D. Fla. 2016) (citing 11 U.S.C. § 305(a)(1)).
[19] *Id.* citing (2 Collier on Bankruptcy ¶ 305.02[2][a], at p. 305-07 (16th ed. 2015)).
[20] *Id.* at *58-59.

10

debtors were forced to remain in Chapter 7, they may lose new and potentially profitable business opportunities that "could be economically catastrophic" to the debtors' business operations.[21]

55. The Bankruptcy Court for the Northern District of Florida noted that "[s]ome courts consider abstention in a single-creditor involuntary to be an 'extraordinary remedy' to be used sparingly . . . [but o]ther courts have abstained from involuntary cases and voiced no hesitation that they might be invoking an 'extraordinary remedy.'"[22]

56. The Court argued that "[t]his dichotomy creates an atmosphere that permits courts great leeway in determining whether or not to abstain with regard to involuntary petitions; especially those that involve, essentially, a two-party dispute."[23]

57. For instance, in *In re Axl Industries, Inc.*, a district court acknowledged that "bankruptcy courts generally grant motions to abstain in two-party disputes where the petition[ing creditor] can obtain adequate relief in a non-bankruptcy forum."[24]

58. In *In re Mountain Dairies*, the Bankruptcy Court for the Southern District of New York ruled that "it was compelled to abstain pursuant to § 305 because the dispute was a two-party dispute for which the petitioning creditor had adequate remedies in state court."[25]

59. The Court articulated a set of factors that several courts have since used to determine whether the interests of creditors and the debtor would be better served by dismissal or suspension under the abstention provisions in Section 305:

    1) economy and efficiency of administration;

---

[21] *In re Peter Hendrik Bos, Jr., & Legendary Holding, Inc.*, 15-30922-KKS & 15-30923-KKS, *60 (Bankr. N.D. Fla. 2016).
[22] *Id.* at *60-61.
[23] *Id.* at *61.
[24] *Id.*
[25] *In re Peter Hendrik Bos, Jr., & Legendary Holding, Inc.*, 15-30922-KKS & 15-30923-KKS, *62 (Bankr. N.D. Fla. 2016) (citing *In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007)).

2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

3) whether federal proceedings are necessary to reach a just and equitable solution;

4) whether there is an alternative means of achieving an equitable distribution of assets;

5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

6) whether a non-federal insolvency has proceeded so far that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

7) the purpose for which bankruptcy jurisdiction has been sought.[26]

60. The Bankruptcy Court for the Northern District of Florida again found that the seven *Mountain Dairies* factors suggested that abstention was the appropriate choice. The "[e]conomy and efficiency of administration points towards abstention" under factor one because proceedings brought by the creditor in state court would be less costly and based on evidence.[27]

61. The Court remarked that "[t]he seven factors enunciated in In re Mountain Dairies weigh in favor of abstention. The reported cases in which courts have struggled with whether or not to abstain are fact specific. The facts here show that this case involves a classic two-party dispute that can be dealt with outside of bankruptcy."[28]

---

[26] *In re Peter Hendrik Bos, Jr., & Legendary Holding, Inc.*, 15-30922-KKS & 15-30923-KKS, *62-63 (Bankr. N.D. Fla. 2016) (citing *In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007)); *see In re 801 South Wells Street, L.P.*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996).
[27] *Id.* at *63-64.
[28] *Id.* at *65-66.

62. The Bankruptcy Court for the Northern District of Florida found that "[a]bstention puts both parties almost back to where they want to be. Abstention allows [the debtors] out of bankruptcy, sends [the creditor] back to state court for collection of its judgment, and does not throw debtors' businesses, and thereby the other creditors, 'under the bus.' Neither side is punished, nor is either rewarded, for its actions prior to or during these involuntary cases."[29]

## ARGUMENT

63. The caselaw regarding dismissal of a voluntary bankruptcy under §305(a)(1), § 707(a), and § 1112(b) strongly favor the Debtors' request for dismissal in this case. As the Bankruptcy Court for the Eastern District of Pennsylvania described, the Debtors were extremely prejudiced when their voluntary Chapter 11 bankruptcy was unfairly converted to what is effectively an involuntary Chapter 7.

64. In the instant case, there is an absence of a true bankruptcy purpose because the Debtors' bankruptcy case now constitutes a two-party dispute between the Debtors and a single creditor, CitiMortgage, Inc. Therefore, dismissal under § 305(a)(1) is appropriate because upon dismissal, CitiMortgage, Inc. would be free to pursue their claims in a non-bankruptcy forum, state court.

65. Another forum, state court, is readily available to protect the interests of both the Debtors and creditor, CitiMortgage, Inc. There are already pending proceedings in non-bankruptcy forums in the state courts of Kansas and Missouri. The Debtors have a pending case (1511-CC00878) against CitiMortgage, Inc. in the 11th Judicial Circuit of St. Charles

---

[29] *In re Peter Hendrik Bos, Jr., & Legendary Holding, Inc.*, 15-30922-KKS & 15-30923-KKS, *67 (Bankr. N.D. Fla. 2016).

13

County, Missouri. CitiMortgage, Inc. has a pending case (10CV09801) against Debtors in the Tenth Judicial District of Kanas, Johnson County District Court.

66. Abstention allows the Debtors out of bankruptcy via dismissal, allows CitiMortgage, Inc. to go back to state court(s) for collection of any judgment, and does not throw the Debtors' business or CitiMortgage, Inc. under the bus. Neither side is punished, nor is either rewarded, for its actions prior to or during this voluntary Chapter 11 and involuntary Chapter 7 bankruptcy case.

67. Additionally, CitiMortgage, Inc. is the only creditor opposed to the Debtors' request for dismissal and there are no other creditors to appear in opposition. This further strengthens the Debtors' argument that Debtors' Chapter 7 bankruptcy case is a two-party dispute that is inappropriate for bankruptcy court.

68. This Court should also consider that if the Debtors are forced to remain in Chapter 7, they may lose new and potentially profitable business opportunities as realtors, developers, and investment property and vacation rental property managers which could prove to be economically catastrophic to the Debtors' business operations. The Debtors are still in business as realtors, developers, and investment property and vacation rental property managers. However, the Debtors' ability to obtain or renew credit has been materially impacted by the conversion of their Chapter 11 bankruptcy to Chapter 7. Remaining in Chapter 7 will great prejudice the Debtors. However, dismissal of the Debtors' Chapter 7 will allow them to pursue profitable business opportunities without prejudicing the only remaining creditor, CitiMortgage, Inc. because CitiMortgage, Inc. would be free to pursue claims in a non-bankruptcy forum, state court.

69. The economy and efficiency of administration greatly favors dismissal of the Debtors' Chapter 7 bankruptcy because the Debtors' two-party dispute with a single creditor, CitiMortgage, Inc., is inappropriate for bankruptcy court, and further proceedings before this Court constitute a waste of this Court's, the Trustee's, and the Debtors' valuable time and resources.

70. The Debtors' Chapter 7 bankruptcy is now a two-party dispute with a single creditor, CitiMortgage, Inc. Bankruptcy court is no longer an appropriate venue, and an alternative forum, state court, is available to both Debtors and CitiMortgage, Inc. Federal bankruptcy proceedings are no longer necessary to reach a just and equitable solution. An equitable distribution of assets is not required in Debtors' Chapter 7 bankruptcy since there are no unsecured creditors.

71. Debtors originally sought bankruptcy jurisdiction under Chapter 11, but have since been forced into an involuntary Chapter 7 bankruptcy. CitiMortgage, Inc. is the only remaining creditor seeking bankruptcy jurisdiction.

72. The seven *Mountain Dairies* factors and Collier test tip in the Debtors' favor, and therefore, dismissal of the Debtors' Chapter 7 bankruptcy under § 305(a)(1) is appropriate.

73. Not all bankruptcy courts consider dismissal under § 305(a)(1) extraordinary, and bankruptcy courts have great leeway in the application of § 305(a)(1) in bankruptcy cases that are two-party disputes. If this Court grants dismissal under § 305(a)(1) it will not be an extraordinary remedy under the previously discussed rubrics established by sister bankruptcy courts.

15

Case 11-21003    Doc# 654    Filed 08/10/16    Page 15 of 17

## CONCLUSION

WHEREFORE, for the above stated reasons, Debtors respectfully supplement their request for an Order from the Court dismissing the above-captioned Chapter 7 bankruptcy, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

LAW OFFICE OF CAMRON HOORFAR, P.C.

By: /s/ Camron Hoorfar, J.D.  LL.M.
Camron Hoorfar, J.D.   LL.M.
MO 60942    KS 24008    OK 31924
202 SW Market Street
Lee's Summit, MO  64063
Phone:  816-524-4949
Fax:  816-524-4963
Choorfar@Hoorfarlaw.com
ATTORNEYS FOR DEBTORS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Debtors' Motion to Dismiss was served, in addition to the parties notified by the US Bankruptcy Court's electronic notification, upon the affected creditor and other parties in interest this 10th day of August, 2016 by United States Mail, first class, postage prepaid, to:

Patricia Hamilton
917 S. Topeka Blvd.
Topeka, KS 66612
CHAPTER 7 TRUSTEE

Eric Johnson
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
ATTORNEYS FOR CITIMORTGAGE, INC.

/s/ Camron Hoorfar, J.D. LL.M.
Camron Hoorfar, J.D. LL.M.