IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARK STEPHEN NEIGHBORS and | ) | Case No. 11-21003 |
| SHELLY KAY NEIGHBORS, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |

### CITIMORTGAGE, INC.'S POST-SEPTEMBER 27 HEARING BRIEF

COMES NOW CitiMortgage, Inc. (hereinafter "Citi"), by and through counsel, submits its post-trial brief with respect to the bifurcated hearing held on September 27, 2016 (the "Hearing").

**I.    INTRODUCTION**

At the request of the Debtors, the Court bifurcated the hearing on Debtors' Motion to Dismiss [Doc. 574] (the "Motion") to take up the initial issue related to what Claims (other than Citi's Claims) currently exist with respect to the bankruptcy case and the legal impact of the same. The parties stipulated that the following issues were to be taken up by the Court at the Hearing:

> **Issue of Law**. Whether the Court is required to dismiss a converted bankruptcy case under 11 U.S.C. § 707(a) or abstain under 11 U.S.C. § 305(a) to the extent it is determined that there is only one pre-petition Claim holder and post-conversion administrative expense Claims.
>
> **Issue of Fact**. Whether, in addition to the Claims asserted by Citi and the Trustee, other Claims currently exist in the bankruptcy case.

As for the issue of law, several of the Debtors' cases demonstrate that the Court is not required to dismiss or abstain even if Citi's Claims are the only Claims that still remain. Additionally, as for the issue of fact, the evidence proves that other Claims still exist in the bankruptcy case. The Debtors have not met their burden with respect to dismissal of this case.

II.   **ARGUMENT**

A.   **Issue of Law: The Court is not required to dismiss a converted bankruptcy case under 11 U.S.C. § 707(a) or abstain under 11 U.S.C. § 305(a) to the extent it is determined that there is only one pre-petition Claim holder and post-conversion administrative expense Claims.**

   1.   **Debtors have the burden of proof with respect to the Section 707(a) and 305(a).**

Debtors seek dismissal of the Chapter 7 case under 11 U.S.C. §§ 707(a) and 305(a). With respect to both sections, the Debtors have the burden of proof. *See In re McGuire-Pike*, 2015 Bankr. LEXIS 2282 at *8 (Bankr. D.N.M. July 10, 2015); *In re Forest Hill Funeral Home & Mem. Park - East*, LLC, 364 B.R. 808, 819 (Bankr. E.D. Okla. 2007). It is with the discretion of the Bankruptcy Court to dismiss a case under Sections 707(a) or 305(a). *McGuire-Pike*, 2015 Bankr. LEXIS 2282 at *12; *Forest Hill*, 364 B.R. at 824.

   2.   **Legal Standard related to Sections 707(a) and 305(b).**

When a debtor is seeking dismissal of a Chapter 7 case under Section 707(a), the Tenth Circuit Bankruptcy Appellate Panel has summarized the standard as follows:

> It is well-established that a Chapter 7 debtor does not have a right to dismiss his case, but must show "cause" for dismissal pursuant to 11 U.S.C. § 707(a), and the determination of cause is within the discretion of the bankruptcy court. Dismissal factors that are often considered are: the best interests of both debtor and creditors; trustee's consent or objection; potential to delay creditor payments; good or bad faith in seeking dismissal; and the possibility of payment priority becoming reordered outside of bankruptcy. ***Emphasis is typically given to any prejudice that dismissal might cause the estate's creditors***. Finally, a debtor's ability to pay debts outside of bankruptcy is not sufficient cause, by itself, to dismiss.

*Isho v. Loveridge (In re Isho)*, 2013 Bankr. LEXIS 1414 at *9 (B.A.P. 10th Cir. Apr. 5, 2013) (emphasis added and citation omitted).

The Debtors also seek abstention from this Court under Section 305(a)(1). "Under 11 U.S.C. § 305(a)(1), a court may abstain from hearing a case or suspend proceedings in a case

under the Bankruptcy Code if 'the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .' Although various courts have identified particular relevant factors under each of those code sections, the decision to abstain under § 305(a) is not substantively different from the determination under § 707(a)." *In re Garza*, 2013 Bankr. LEXIS 2506 at *18-19 (Bankr. D. Colo. June 21, 2013) (internal citation omitted).

With respect to Section 305, there is a split of authority as to the exact standards to be applied in the Tenth Circuit. *Compare In re RAI Marketing Services, Inc.*, 20 B.R. 943 (Bankr. D. Kan. 1982) (adopting restrictive view) *with In re Tarletz*, 27 B.R. 787 (Bankr. D. Colo. 1983) (adopting expansive view). In *Starlite Houseboats, Inc.*, this Court rejected the restrictive view that would allow the Court to only consider three factors set forth in *RAI Marketing*. *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 386-88 (Bank. D. Kan. 2010). In doing so, the Court specifically stated: "Only by considering *all* of the relevant circumstances of the case can the court make a sound decision whether a particular case presents the rare circumstance where dismissal is appropriate." *Id*. at 388 (emphasis added).

As recognized by the Court, it must look at all circumstances of the case, including whether it is a two-party dispute. Thus, the existence of a two-party dispute may be relevant, but it is not determinative. Further, cases cited in the Debtors' Motion and Supplement specifically reject the argument that the Court is compelled to dismiss a case if a two-party dispute exists.

In their Motion, the Debtors rely upon *In re Dzierzawski* to support their initial assertion that the case should be dismissed because it is a two-party dispute. *See* Motion at ¶¶ 30 and 34 (citing *In re Dzierzawski*, 528 B.R. 397 (Bankr. E.D. Mich. 2015)). The *Dzierzawski* decision does not stand for the proposition that two-party disputes must be handled outside of bankruptcy. Indeed, the decision says it "may" be appropriate, but then goes on to reference case law where

3

WA 8725693.2

Case 11-21003    Doc# 678    Filed 10/14/16    Page 3 of 11

the bankruptcy court refused to dismiss the case despite being a two-party dispute. *Id*. at 406 (referencing *Kirby v. Spatz (In re Kirby)*, 221 B.R. 992, 994 (Bankr. M.D. Fla. 1998)). The *Dzierzawski* court found that the case should not be dismissed even though the objecting creditor had 99% of the claims in dollar amount (excluding administrative claims). *Id*. at 401, 417-18. In doing so, the *Dzierzawski* court focused upon whether creditors would be prejudiced. *Id*. at 406.

In their Motion, the Debtors also cite to the *Kirby* decision. *See* Motion at ¶ 6. In *Kirby,* the bankruptcy court originally dismissed the bankruptcy case. *Kirby*, 221 B.R. at 992-93. On reconsideration, the *Kirby* court found:

> The difficulty is that only one creditor exists in the instant case. There is no doubt that this is clearly a two-party dispute. However, it is equally clear that the Debtor has a substantial asset that would be available for liquidation if the Trustee prevails on the Objection to Exemptions. This leads to the ultimate question: Should the Debtor be permitted to dismiss his Chapter 7 case for cause under Section 707(a) when it is clearly only a two-party dispute; or may this Court in its discretion give the Plaintiff the protection of this Court and the benefits available under the Bankruptcy Code to assure that the Debtor does not place the rest of his assets out of the reach of the Plaintiff, in fact, to reward the Debtor for his conduct.
>
> This Court, having taken into consideration the conduct of the Debtor, and particularly the multiple filings, is satisfied that the Debtor should not be allowed to dismiss his case.

*Id.* at 994.

In their recent supplement, the Debtors place great emphasis on the recent unpublished opinion *In re Bos*. *See* Supplement [Doc. 654] at ¶¶ 52-62. In *Bos*, the debtor and his company were placed into involuntary bankruptcy by a single petitioning creditor. *See In re Bos*, Nos. 15-30922-KKS, 15-30923-KKS, 2016 Bankr. LEXIS 773 (Bankr. N.D. Fla., Mar. 11, 2016). As part of their response to the involuntary petition, the debtors requested that the Court abstain under Section 305. *Id*. at *2. In doing so, the debtor argued that the Court was compelled to abstain because it involved a two-party dispute. *Id*. at *79. After balancing several factors, the *Bos* Court

abstained from hearing the case. The *Bos* Court, however, specifically stated that it disagreed with the debtors that it was "compelled" to dismiss the case solely because it was a two-party dispute. *Id.* It should be noted that the *Bos* decision has been appealed and the case is currently under advisement by the District Court. *See SE Property Holdings LLC v. Bos,* No. 3:16-cv-00123 (N.D. Fla.).

This Court has great discretion to consider all relevant factors. The factor that courts appear to place the greatest weight upon is prejudice caused to the creditors—not the numerosity of claims. In short, the law does not compel this Court to dismiss this case even if Citi's claims are the only ones that still remain. However, as demonstrated below, it is clear that more than Citi's claims exist.

**B.     Issue of Fact: The evidence demonstrates that other Claims exist in addition to the Claims asserted by Citi and by the Chapter 7 Trustee.**

The factual question before the Court at the Hearing was what "Claims" currently exist in the bankruptcy case. As noted in the agreed Pre-Trial Order, unless otherwise defined, capitalized terms were to have same meaning as set forth in Section 101. "Claims" was not otherwise defined in the Order. Under the Bankruptcy Code, "Claim" is defined very broadly:

> (5) The term "claim" means—
>
> > (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> >
> > (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. 101(5). For the reasons set forth herein, it clear that numerous "claims" exist.

### 1. NationStar has an allowed claim under 11 U.S.C. § 502(a)

Pursuant to Section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed until there is an objection. 11 U.S.C. § 502(a). On August 9, 2011, Bank of America filed Proof of Claim No. 19 (the "NationStar Claim") in the amount of $262,428.32. [Ex. S22]. The NationStar Claim was transferred to NationStar on November 23, 2012. [Ex. S22]. The NationStar Claim has not been withdrawn. [Stipulated Fact ("SF") # 56]. No objection has been filed to the NationStar Claim. [SF # 56]. The NationStar Claim is deemed allowed under the Bankruptcy Code.

The Debtors, for the first time, provided their settlement with NationStar to the Trustee and Citi at the Hearing. While both Citi and the Trustee had little time to review, the "settlement" appears to have been a loan modification and release of claims *against* NationStar by the Debtors. [Ex. C1 and C2]. In the loan modification, the principal balance of the note was purportedly reduced to $200,000 and Debtors were to make a monthly loan payment of $1,375.33. [Ex. C2]. The parties agreed that the NationStar loan would continue to be secured by Tract E3 and they recorded a "re-executed deed of trust" to that effect. [Ex. C1]. The loan modification appears to have provisions that would reinstate the original loan balance under certain circumstances. [Ex. C2].

On August 27, 2015, Tract E3 was sold. [Hearing Transcript attached hereto as **Exhibit A** ("H.TR") at 64]. The Debtors did not seek this Court's approval with respect to the sale. NationStar received $193,391.21 from the sale. [H.TR at 64]. Debtors claim that NationStar has been paid off. [H.TR at 25, 77-78]. Curiously, however, NationStar has not withdrawn the NationStar Claim and the Debtors have not objected to the same. [SF #56].

Mr. Neighbors testified that the NationStar lien had been released and the purchaser of Tract E3 was given clear title as part of the sale. [H.TR at 157-58]. Post-Hearing, Citi requested

from Debtors' counsel a copy of the recorded modification agreement and the recorded lien release regarding Tract E3. Counsel for the Debtors did not have a copy of the August 2015 release and suggested that Citi's counsel contact the Morgan County Recorder of Deeds. [Email Exchange attached as **Exhibit B**]. Citi both inquired with Morgan County and requested a title report. NationStar has not filed a release of its deed of trust with respect to Tract E3. [E3 Informational Report attached as **Exhibit C**].

      **2.**      **Whether a party has filed a proof of claim is not determinative with respect to whether "Claims" exist in a Chapter 7 case.**

Whether a party has filed a proof of claim by a bar date is not determinative with respect to whether claims exist in a Chapter 7 case. For instance, under Bankruptcy Rule 3002(c)(3), a party has 30 days to file a claim that results from a final judgment for the recovery of money or property. FED. R. BANKR. P. 3002(c)(3). If a party did not have notice or actual knowledge of a bankruptcy case, then even if its claim is tardily filed, it is given status as a timely filed claim. 11 U.S.C. § 726(a)(2)(C). Additionally, in a Chapter 7 case, even if a party did have notice or actual knowledge, a tardily filed claim is not disallowed, but merely subordinated in payment. *See* 11 U.S.C. § 726(a)(3). Here, there are several reasons to suspect that notwithstanding the proof of claim bar date, other claims still exist.

      **a.**      **The veracity of the Debtors' schedules should be questioned.**

The Debtors prepared the listing of creditors that both the Court and the other parties to this case are relying upon. [Exs. S2, S3, S4, S5]. If a creditor was not listed on the schedules or included the creditor matrix, then it is uncertain whether they received notice of the bankruptcy case. The preparation and the information contained in the original schedules has been called into question by the Debtors.[1] Further, the original schedules, the Schedule of Unpaid Debts, and

---

[1] *See, e.g.*, S68 at p. 26-27, 36-37, 136-137, 188, and 208.

the conversion schedules are inconsistent with respect to their listing of creditors. [Ex. S3-S5]. Further, Mr. Neighbors testified that his father had loaned him money at some point. [H.TR at 137]. Such loan is not listed on the original schedules, the conversion schedules, or the Schedule of Unpaid Debts. [Ex. S3-S5]. When taken together, it raises a potential question as to whether all creditors have received notice of this bankruptcy case.

      **b.    Section 502(h) Claims may likely exist on account of the Debtors' unauthorized use of estate funds.**

Section 549(a) provides that the Trustee may avoid post-petition unauthorized transfers of estate property. 11 U.S.C. § 549(a). Section 550 allows a bankruptcy trustee to recover avoided transfers from the initial transferee and/or the entity for whose benefit such transfer was made. 11 U.S.C. § 550(a)(1). Moreover, under certain circumstances, the trustee may recover avoidable transfers from subsequent transferees. 11 U.S.C. § 550(a)(2). Section 502(h) "gives a transferee from whom property is recovered by exercise of avoiding powers, an allowed unsecured claim." *Wild W. World, L.L.C. v. Mainland Valuation Servs. (In re Wild W. World, L.L.C.)*, Nos. 07-11620, 07-11913, 07-5365, 2008 Bankr. LEXIS 2964 at *11-12 (Bankr. D. Kan. Oct. 1, 2008); 11 U.S.C. § 502(h).

Mr. Neighbors testified that the Debtors paid off certain pre-petition creditors after the conversion date, specifically the Debtors' prepetition attorneys, Mark Murphy (Claim No. 12-1) and the Graves Garrett law firm (Claim No. 18-1). [H.TR at 66-67, 109-11]. When asked about the source of such funds, Mr. Neighbors could not give a clear answer. [H.TR at 66-67, 109-11]. If the source of the payments were from estate property, then such recipients may be subject to avoidance actions under sections 549 and 550. If the Trustee recovers such payments under section 550, it would give rise to unsecured claims under section 502(h).

The Debtors own at least sixty percent (60%) of Neighbors Investments Inc. ("Neighbors Investments"). [Ex. S5, p. 11]. Mr. Neighbors testified that the Debtors loaned money to Neighbors Investments. [H.TR at 120]. Debtors' operating reports indicate that throughout the course of their Chapter 11 case, they made company loans that totaled an approximate amount of $190,000. [Ex. S73, Doc. 361][2]. Mr. Neighbors testified at the Hearing that the loans made to Neighbors Investments were made pursuant to their own *unconfirmed* plan of reorganization. [H.TR at 130]. The payments made to Neighbors Investments may be subject to avoidance under Section 549 to the extent they were unauthorized.

Mr. Neighbors indicated they or one of their companies funded payments made to Farmers Bank & Trust ("Farmers") on behalf of Neighbors Investments. [H.TR. at 130]. The monthly payments to Farmers under the Neighbors Investments confirmed plan of reorganization were to be $464.09 per month for one year, then $782.64 per month for a period of 10 years with a balloon payment at the end of the 10-year period. [Ex. S60, p. 3]. The Neighbors Investments plan was confirmed on June 26, 2013. [Ex. S60]. Mr. Neighbors testified that he continues to pay Farmers through Neighbors Investments. [H.TR at 97]. Farmers has potential liability under Sections 549 and/or 550, which could give rise to a claim under Section 502(h).

   c. **Claims may likely exist on account of the Debtors' unapproved settlements during the Chapter 11.**

The definition of "claim" under the Bankruptcy Code includes contingent claims. 11 U.S.C. § 101(5). During the course of their five year bankruptcy, it appears that Debtors only sought formal approval of settlements on two occasions. *See* Doc. 295 and 444. With respect to the Beadle settlement, the Debtors objected to their own motion and attempted to back out of the settlement. [Ex. S43]. At their July 26, 2016 341 meeting, when asked about claims against Ms.

---

[2] Ex. S73, p. 1, 20, 42, 47, 52, 57, 74, 83, 97, 106, 124, 130, 138, 147, 154, 173, 186, 202, 213, 219, 225, 231, 237, 246, 252, 266, 280, 288, 296, 304, 312, 331, 338, 345, 351, 356, 370, and 398.

Beadle, the Debtors were unsure whether they still had claims against her. [Ex. S71 at 25]. However, in their conversion schedules, they still list claims against Ms. Beadle. [Ex. S5 at 13].

Debtors purportedly settled with Cornerstone Bank. [H.TR at 87]. A review of the Court docket demonstrates that Debtors did not file a motion seeking approval of such a settlement. The settlement, however, caused Cornerstone to withdraw its proofs of claim. [H.TR at 87]. Mr. Neighbors has testified both at the Hearing and at his meeting of creditors that such settlement was under duress and he did not rule out the possibility of asserting claims against Cornerstone. [H.TR at 91, Ex. S71 at p. 17-22]. If the Debtors' unapproved settlement with Cornerstone was to be repudiated, then it would naturally follow that Cornerstone's claims could also be revived. Cornerstone may have a contingent claim against the bankruptcy estate.

## III. CONCLUSION

The Debtors have the ultimate burden of proof to support a dismissal of their case under Sections 707(a) or 305(a). The Hearing, on Debtors' request, was on a very narrow basis regarding what claims remain in this bankruptcy estate and the legal impact of such claims. The evidence demonstrates more than Citi's claims exist. Moreover, even if only Citi's claims existed, this Court would not be compelled to dismiss the case. Indeed, like the *Kirby* and *Dzierzawski* cases, other circumstances exist in this case that mitigate against the two-party dispute factor. Accordingly, the Debtors have not and cannot meet their burden regarding dismissal of this case.

Dated: October 14, 2016.

        Respectfully submitted,

        SPENCER FANE LLP

        s/ Eric L. Johnson
        Eric L. Johnson    KS# 20542
        Kersten L. Holzhueter    KS# 24885
        1000 Walnut St., Suite 1400
        Kansas City, MO 64106
        Telephone: 816-474-8100
        Facsimile: 816-474-3216
        ejohnson@spencerfane.com
        kholzhueter@spencerfane.com

        Attorneys for CitiMortgage, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2016, a true and correct copy of the foregoing was electronically filed with the court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system and via U.S. Mail to the following:

| | |
|---|---|
| Camron L. Hoorfar | Patricia E. Hamilton |
| Law Office of Camron Hoorfar, PC | Stevens & Brand, LLP-Topeka |
| 202 SW Market St. | 917 SW Topeka Blvd. |
| Lee's Summit, MO 64063 | Topeka, KS 66612 |

        s/ Eric L. Johnson
        Attorney for CitiMortgage, Inc.