SO ORDERED.

SIGNED this 17th day of November, 2016.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

Designated for online use but not print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

MARK STEPHEN NEIGHBORS and
SHELLY KAY NEIGHBORS,

                DEBTORS.

CASE NO. 11-21003
CHAPTER 7

**MEMORANDUM OPINION AND ORDER
FOLLOWING EVIDENTIARY HEARING ON SPECIFIC ISSUES RELEVANT
TO DEBTORS' MOTION TO DISMISS**

On September 27, 2016, the Court conducted an evidentiary hearing on two specific issues related to the Debtors' motion to dismiss under 11 U.S.C. §§ 305(a) and 707(a).[1] Debtors appeared in person and by their counsel, Camron L. Hoorfar. Creditor

---

[1] Doc. 574. Section 305 is titled abstention. It states in subsection (a) that a court "may dismiss a case under this title, or may suspend all proceedings in a case under this title." Nevertheless, in their motion Debtors seek only dismissal. Later in the proceedings, Debtors refer to abstention but make no distinction between dismissal and abstention. The Court will therefore address the motion as seeking dismissal and not abstention.

CitiMortgage, Inc. (Citi) appeared by Eric Johnson and Kersten Holzhueter. Creditor Bank of Versailles appeared by Frank Wendt. The United States Trustee appeared by Richard A. Wieland. The Chapter 7 Trustee, Patricia E. Hamilton, appeared by Patricia E. Hamilton.

At the request of the Debtors, the purpose of the hearing was to address two issues related to their motion to dismiss. Those issues are stated in the pretrial order as follows:

> 1. Issue of Fact. Whether, in addition to the Claims asserted by Citi and the Trustee, other Claims currently exist in the bankruptcy case.
>
> 2. Issue of Law. Whether the Court is required to dismiss a converted bankruptcy case under 11 U.S.C. § 707(a) or abstain under 11 U.S.C. § 305(a) to the extent it is determined that there is only one pre-petition Claim holder and post-conversion administrative expense Claims.[2]

"All other contested matters of fact and law related to the Motion to Dismiss are hereby preserved for later hearing."[3]

**FINDINGS OF FACT.**

This case was voluntarily filed under Chapter 11 on April 12, 2011, and converted to Chapter 7 over the objections of the Debtors by order filed on December 21, 2015. The deadlines for filing proofs of claim in the Chapter 11 case expired on August 15, 2011[4]

---

[2] Doc. 666, 2.

[3] *Id*.

[4] Doc. 29.

2

Case 11-21003   Doc# 681   Filed 11/17/16   Page 2 of 16

and in the Chapter 7 case on July 29, 2016.[5]  It is undisputed that the only pending proofs of claim were filed by Citi and Navistar.  Despite this fact and the narrow issue of fact stated in the pretrial order, the parties presented extensive testimony concerning the history of claims, other than Citi's.  The Court therefore makes findings of fact concerning the claims in this case.

**A. Secured Claims other than Citi.**

In addition to Citi, secured proofs of claim were filed by Toyota Motor Credit, First Federal, and Nationstar Mortgage.  In addition, although the Bank of Versailles' proof of claim forms do not state its claims are secured, a review of the attached documentation indicates they are secured claims.[6]  Further, although First Federal's proof of claim was filed in this case, the borrower identified on the attached documentation is Neighbors Investments, Inc.[7]  This claim is therefore addressed with the other claims based upon the Debtors' guarantees.

Toyota's proof of claim for approximately $6,000 was filed in April 2011.  On February 05, 2016, Debtors filed a letter from Toyota dated January 8, 2015, stating that the account had been paid in full as of January 7, 2015, but containing no payment history.[8]  Debtor objected to the claim, and an order striking the claim was filed on July

---

[5] Doc. 553.

[6] POCs 16 and 17.

[7] POCs 13, 14, and 15.

[8] Doc. 508.

21, 2016.[9]

Nationstar Mortgage, LLC filed a claim for $262,428.32, secured by 16963 Gentle Slopes Drive, Gravois Mills, MO,[10] which property appears to have been titled in the Debtors at one time but by at least August 2015 was held by Neighbors Investments Nationstar's claim was disputed, Debtors asserted claims against Nationstar, and a settlement was mediated by a judge of this court. Although the settlement agreement was signed by the Debtors in the presence of the Court on March 26, 2015, a motion to approve the settlement was not filed. Because of a confidentiality provision in the agreement, Debtors had declined to provide a copy of the agreement to the Trustee and Citi prior to the hearing. A copy was provided during the hearing and admitted into evidence. As a result of the settlement, Debtors were paid $81,833.20 by Nationstar and $10,000 by a third party, Nationstar's claim was reduced to $200,000,[11] and the collateral was sold on August 27, 2015. From the sale proceeds, Nationstar received approximately $193,000, and Debtors received approximately $151,000.[12] The Debtors share of the proceeds was deposited into an account in the name of Neighbors Investments, but Debtors used an undetermined amount of the funds to pay personal expenses. No accounting has been made to the bankruptcy estate. Although Debtor Mark Neighbors

---

[9] Doc. 634.

[10] POC 19.

[11] Exh. C-1.

[12] Exh. C-3.

4

testified he believes that Nationstar released all claims against him, Nationstar's proof of claim has not been released, and Debtors have not filed an objection.

The Bank of Versailles filed two proofs of claim, one for approximately $500,000 and the other for approximately $238,000 for money owned on loans to the Debtors secured by real property in Missouri.[13] The Bank of Versailles and Debtors settled the claim by agreement, which was incorporated into the Debtor's motion to sell the bank's collateral to it under § 363.[14] An order granting the motion was entered on October 10, 2012.[15] The Bank of Versailles objected to dismiss and appeared at the hearing for the limited purpose of assuring that if the case is dismissed, the orders relating to its claim will remain binding on Debtors.

### B. Unsecured Claims Seeking to Enforce Personal Guarantees.

First Federal filed three proofs of claim in June 30, 2011.[16] Although filed as secured claims against Debtors, the attached documents show that the debts were those of Neighbors Investments and were secured by real property not owned by Debtors. Debtors' brief states that their liability was as guarantors. Neighbors Investments filed a separate Chapter 11 case, and the claims of First Federal were addressed in the Neighbors

---

[13] POCs 16 and 17.

[14] Doc. 195.

[15] Doc. 204. Debtors subsequently filed two adversary proceedings against the Bank of Versailles. Case nos. 14-6082 and 14-6083. The first was dismissed with prejudice and the second was dismissed for procedural reasons. *See* doc. 587.

[16] POCs 13, 14, and 15.

5

Investments confirmed Chapter 11 plan of reorganization. On June 30, 2016, Debtors objected to First Federal's claims in this case, alleging that the proofs of claim should have been filed only in the Neighbors Investments case.[17] First Federal withdrew its proofs of claim on July 15, 2016.[18]

Central Bank of Lake of the Ozarks filed four unsecured proofs of claims for $147,000, $714,000, $200,000, and $202,000, based upon Debtors' personal guarantees of loans to Gentle Slopes Partners, LLC.[19] The proofs of claim were withdrawn on November 11, 2011.[20] Mark Neighbors testified that the claims were resolved by trustee's sale of two parcels of property to a third party who bid the entire amount owed. Mark Neighbors also testified that the believes he has claims against Central Bank.

Farmers Bank & Trust filed an unsecured proof of claim for $185,000 based upon Debtor's personal guarantee of a loan to Neighbors Investments.[21] The loan is being paid through the Neighbors Investments confirmed plan, and the amount currently owed is in the range of $150,000 to $160,000. Debtors are loaning funds to Neighbors Investment to make the monthly payments. Farmers withdrew its proof of claim on September 7,

---

[17] Docs. 613, 614, and 615.

[18] Docs. 626, 627, and 628.

[19] POCs 20, 21, 22, and 23.

[20] Doc. 97.

[21] POC 5. Farmers also filed POCs 6 and 24 but they were withdrawn on October 14, 2014. Docs. 329 and 330.

2016.[22] Mark Neighbors testified that the claim was withdrawn after he questioned the legitimacy of the claim because Farmers had not produced a copy of a guarantee.

Private Bank and Trust filed an unsecured claim for approximately $672,000 based upon Debtors' personal guarantee of loans secured by real property made to Stilwell Industrial, LLC and Metcalf 211, Inc.[23] By Settlement Agreement effective March 7, 2012, the borrowers agreed to deed the real property to lender in exchange for lender's agreement not to sue borrowers and to release the guarantees. Debtors did not seek Court approval of the settlement, which was not made known to the Court until the agreement was filed on February 5, 2016.[24]

**C. Unsecured Claims not Seeking to Recover on Personal Guarantees.**

Cornerstone Bank filed three unsecured proofs of claim for approximately $81,000, $96,000, and $109,000 based upon a state court judgment filed on March 15, 2011, against Gentle Slopes Builders, LLC; Neighbors Investments; Mark S. Neighbors; and Shelly K. Neighbors, jointly and severally.[25] The claims were withdrawn on March 2, 2012.[26] Mark Neighbors testified that there was a settlement agreement with Cornerstone. No Court approval was sought, and there is no evidence as to the settlement

---

[22] Doc. 662.

[23] POC 8.

[24] Doc. 509.

[25] POCs 2, 3, and 4.

[26] Doc. 131.

terms. Mark Neighbors believes he signed the agreement under duress, such that he may have claims against Cornerstone.

The Internal Revenue Service on June 15, 2011 filed a claim for $763.40 for income taxes for tax period December 31, 2010.[27] On November 18, 2011, it filed an amended proof of claim reducing the claim to $0.[28]

Subsequent to the conversion of this case to Chapter 7, Debtors paid two prepetition unsecured claims for legal services in full without Court or Trustee approval. The claims were filed by Graves Bartle Marcus and Garrett, LLC for $2502.02 and by Mark Murphy for $2997.46.[29] Withdrawals of these claims were filed by these creditors on February 5, 2016.[30] The post conversion claim of the United States Trustee for quarterly fees, filed on February 5, 2016, was paid in full by Debtors, and the claim was withdrawn on June 2, 2016.[31]

The tax claim of Morgan County, Missouri for $5,983.40 was filed in May, 2011.[32] The claim was withdrawn on February 5, 2016, based upon a filed letter dated December

---

[27] POC 11.

[28] POC 11-2.

[29] POCs 12 and 18.

[30] Docs. 510 and 511.

[31] Doc. 580.

[32] POC 9.

24, 2014, stating that the claim was satisfied on November 20, 2012.[33]

**D. Citi's Claims.**

Citi's is the primary unresolved claim. It filed three proofs of claim, claim numbers 7, 10, and 25. Claim number 7 is for approximately $401,000. Citi's amended proof of claim states it is fully secured.[34] Claim 10 is for approximately $400,000, secured by real property which Citi states has a value of $260,000, leaving an unsecured claim of approximately $140,000.[35] Citi's third claim is reflected in POC 25, last amended on September 9, 2016, which states that the claim is in the approximate amount of $754,000 and is secured by the Debtors' principal residence in Overland Park, Kansas. Citi values the residence at $680,000 and states the property is not fully exempt because it exceeds the one acre homestead limit.[36]

There are at least three pending proceedings between Citi and Debtors. On November 2, 1010, Citi filed a foreclosure action against Debtors.[37] Debtors responded with a counterclaim.[38] Citi's motion for relief from stay to proceed with this litigation is

---

[33] Doc. 525. The person paying the claim was not identified.

[34] POC 7-2.

[35] POC 10-2.

[36] POC 25-3, Doc. 602, 3.

[37] Doc. 408-4 (*CitiMortgage v. Neighbors*, case no. 10CV09801, 10th Judicial District, Johnson County, Kansas).

[38] *See* doc. 408, 2.

9

pending.[39] Debtors have sued Citi in Missouri state court[40] and filed an adversary proceeding against them in this Court.[41] It is Debtors' position that Citi has only a secured claim.

### E. Contingent claims.

There are several contingent claims against the estate. Section 549(a) provides that the Trustee may avoid post-petition unauthorized transfers of estate property, § 550 allows the Trustee to recover the avoided transfers from the entity to whom or for whose benefit the transfer was made, and § 502(h) gives a transferee from whom property is recovered by the exercise of avoiding powers an allowed unsecured claim. The Trustee may have avoidance claims against Mark Murphy, Graves Bartle Marcus and Garrett, LLC, Neighbors Investments, and Farmers. After the conversion date and without Court approval, Debtors paid the unsecured claims of Mark Murphy and Graves Bartle Marcus and Garrett, LLC. Mr. Neighbors testified that while this case was pending under Chapter 11 he made transfers to Neighbors Investments. The Court did not approve such transfers. Further, Debtors have been funding the payments to Farmers required under the Neighbors Investment confirmed Chapter 11 plan.

### F. Disputes could arise notwithstanding Debtors' purported settlements with creditors.

---

[39] Doc. 408.

[40] *See* doc. 679, 3 n. 13 (citing *Neighbors v. CitiMortgage*, case no, 1511-CC00878).

[41] Id. (citing *Neighbors v. CitiMortgage*, adversary case no. 15-6106).

10

There are several claims which could arise because of Debtors' disregard of bankruptcy procedures and their litigiousness. Debtors settled the Nationstar claim, and the real property securing the claim has been sold. However, Nationstar's proof of claim has not been withdrawn. Further, the Trustee questions Debtors' receipt of cash distribution from the sale proceeds.[42] Central Bank of Lake of the Ozarks has withdrawn its proofs of claim to enforce personal guarantees of debtors of a third party, but Mark Neighbors testified that he believes he has claims against the bank. Likewise, although the claim of Linda Beadle against the estate was settled, a claim against her was listed in Debtors' conversion schedules. The claims of Cornerstone Bank were withdrawn after a purported settlement agreement which was not approved by this Court. Mr. Neighbors believes he signed the settlement agreement under duress, such that he may have claims against Cornerstone.

**DISCUSSION.**

    **A. THE POSITIONS OF THE PARTIES.**

    **1. Debtors' position.**

Debtors assert that there is no creditor other than Citi with "an active, unsettled claim against the Debtors"[43] and therefore this case is a two-party dispute between Debtors and Citi "regarding the value of the real estate securing Claim #10-2 and whether

---

[42] Doc. 655.

[43] Doc. 679, at 3.

Claim #10-2 is a secured or unsecured claim."[44] As stated in the pretrial order, Debtors' legal position is that because the case is now a two-party dispute, the Court is *required* to dismiss the case under § 707(a) or abstain under § 305(a).[45]

### 2. Citi's Position.

Citi opposes the motion to dismiss. It summarizes its position as follows:

> The Debtors voluntarily filed for bankruptcy and have received the protections and benefits of such filing for over five years. During that time, they have used this Court's time, resources, and mechanisms to sell assets, initiate lawsuits, and resolve various disputes, including discovery and settlement disputes. They have also lived in their home and maintained a vacation lake house without making payments towards the secured debt on the same. Yet, at the same time, they have made substantial loans to their business interests without Court approval.
>
> Now, when faced with one of the fundamental bankruptcy tenets—full financial transparency—they once again seek to dismiss this case and force creditors back into the chaos of various state court proceedings without any check on their litigious behavior. In this regard, Citi continues to believe that it and all creditors are better served having an independent party, such as the Trustee, in place to evaluate the Debtors' assets, orderly liquidate such assets for the benefit of creditors, and investigate the financial dealings of the Debtors and their affiliates. As such, the Motion should be denied.[46]

It argues that case law establishes that when ruling on the motion to dismiss, the Court

---

[44] Doc. 654, 5.

[45] Doc. 666, 2 (Pretrial Order, emphasis supplied).

[46] Doc. 602, 1.

has discretion to consider all relevant facts and the Court is not compelled to dismiss, even if Citi's claims are the only ones that remain.[47] But it also argues that the evidence establishes that there are additional claims because the Nationstar poof of claim has not been withdrawn, there are potential contingent claims, and "claims may likely exist on account of the Debtor's unapproved settlements during the Chapter 11."[48]

### 3. The Chapter 7 Trustee's Position.

The Chapter 7 Trustee also opposes the motion to dismiss. She observes that at the hearing, Debtors did not challenge the assertion that dismissal is not required, even if there is only one creditor. She also refutes Debtors' allegations that this is a two-party dispute, mentioning the possibility of contingent claims if she avoids transfers under § 549, the Nationstar proof of claim, and Mark Neighbor's admission that he owes his father money.[49] She also alleges Debtors received funds which were not reported as monthly income.[50]

### B. ANALYSIS.

### 1. The Court is not required to dismiss this case, even if it were a two-party dispute.

The Court finds that it is not required to dismiss the case under either §§ 707(a) or

---

[47] Doc. 678, at 5.

[48] *Id*. at 9.

[49] Doc. 677, at 2. *See also* docs. 619 and 655.

[50] Doc. 619.

305(a), even if this case were solely a two-party dispute.  Both subsections state circumstances when a court "may" take the described action.  Subsection 707(a) provides "[t]he court may dismiss a case under this chapter . . . only for cause."  "The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, was well as the interests of the various parties."[51]  Subsection 305(a) states in part "[t]he court . . . may dismiss a case under this title . . . if - (1) the interests of creditors and the debtor would be better served by such dismissal."  "[T]he decision to abstain under § 305(a) is not substantially different from the determination under § 707(a).  In either case, the Court must make an equitable determination by looking at the totality of the circumstances."[52]  Neither section states any circumstance when a court is "required" to dismiss.

Debtors have not provided authorities supporting their novel interpretation of §§ 707(a) and 305(a).  When moving to dismiss, Debtors cited numerous cases standing for the general proposition that determination to dismiss a case under § 707(a) or § 305 is discretionary based upon the consideration of multiple factors, not only whether a case is a two-party dispute.[53]  For example, Debtors' submit the following quotations: "Determining whether cause exists to dismiss a case requires a balancing of the interest of

---

[51] 6 *Collier on Bankruptcy,* ¶ 707.03 at 707-15 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. 2016).

[52] *In re Garza*, 2013 WL 3155105, *6 (Bankr. D. Colo. June 21, 2013) (citations omitted).

[53] Doc. 574.

14

the debtor and the creditors;"[54] and "[t]he decision whether to grant a motion to dismiss in a Chapter 7 case lies within the discretion of the bankruptcy court."[55]  Debtors also include two quotations of lists of relevant factors.  As to dismissal under 305(a), Debtors state: "The decision to dismiss . . . under §305(a) is discretionary and must be made on a case-by-case basis"[56] and "[d]ismissal . . . of a case *may* be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor."[57]  Debtors' post-hearing brief[58] includes quotations superficially supporting their position that dismissal is mandatory when the case is a two-party dispute, but when the context of the quotations is reviewed, it is apparent that the determination is discretionary based upon multiple factors.[59]

The Court therefore holds dismissal is not required when a case presents a two-party dispute.

**2. This case is not a two-party dispute.**

The evidence does not establish Debtors' position that this is now a two-party dispute.  As found above, it is not certain that Nationstar's claim is fully resolved.  If it is

---

[54] *Id*. at 2, quoting *In re Hopper*, 404 B.R. 302, 307 (Bankr. N.D Ill. 2009).

[55] *Id*.

[56] *Id*. at 6, quoting *In re Dzierzawski*, 528 B.R. 397, 405 (Bankr. E.D. Mi. 2015).

[57] *Id.*, quoting *In re Dzierzawski*, 528 B.R. 406 (emphasis added).

[58] Doc. 679.

[59] *In re Mountain Dairies*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007); *In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001); *In re Mazzocone*, 183 B.R. 402 (Bankr. E.D. Pa. 1995).

15

determined that Citi holds an unsecured claim, the Trustee has identified several possible avoidance actions, which could be pursued to obtain assets for payment of that unsecured claim. If successful, these avoidance actions could result in claims against the estate. In addition, Debtor Mark Neighbors has identified possible claims which he may assert, but these claims have become property of the estate.

In short, the matters needing to be resolved in this bankruptcy case are not limited to state law issues relating to Citi's claim. This case is not a two-party dispute.

**CONCLUSION.**

For the foregoing reasons, the Court denies Debtors' motion to dismiss to the extent it is predicated upon the position that this case is a two-party dispute between Debtors and Citi.

A status conference will be scheduled to explore what further hearings, if any, are required before the remaining aspects to Debtors' motion to dismiss are ready for decision.

**IT IS SO ORDERED.**

###